## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DIANE R. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DAVID M. WALKER** | ) | **Civil Action No.: JDB-07-1452** |
| **Comptroller General of the United States** | ) | |
| **Government Accountability Office** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## DEFENDANT'S MOTION TO DISMISS
## OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

David M. Walker, Comptroller General of the United States Government Accountability Office, defendant herein, by the undersigned counsel, submits this Motion to Dismiss, or in the Alternative, for Summary Judgment. Plaintiff's claims should be dismissed or, in the alternative, summary judgment should be granted to Defendant in this suit brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000*e et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, because the facts alleged do not support Plaintiff's claims, there are no genuine issues in dispute, and Defendant is entitled to judgment as a matter of law.

Plaintiff Diane Williams is a Senior Trial Attorney, GS-14, with the Personnel Appeals Board ("PAB" or the "Board"), in the Office of the General Counsel ("PAB/OGC"). The PAB/OGC conducts investigations into complaints of alleged prohibited personnel actions brought

by employees of the Government Accountability Office ("GAO" or the Agency).   Ms. Williams alleges that the failure to promote her from GS-14 to GS-15 constitutes unlawful discrimination based on race (African-American), sex (female), and age (over 40).  Ms. Williams also alleges that the Board retaliated against her and subjected her to a hostile work environment based on race, age and gender.

Ms. Williams cannot adduce any evidence to support her claims.  First, with respect to the issue of the Board's alleged failure to promote her to the GS-15 level, in December 2005, the Board posted the only GS-15 vacancy that was open during Ms. Williams' employment, that of General Counsel.  Ms. Williams did not apply.  The basis of Plaintiff's non-promotion claim is an email Ms. Williams sent on January 20, 2006 to the Acting General Counsel during a 4-month transition period in which the prior General Counsel had retired and a new General Counsel had not yet been hired. The Acting General Counsel did not grant or deny Ms. Williams' request for a promotion to GS-15, but rather advised Ms. Williams that she should make the request to the new General Counsel when that person was selected – which Ms. Williams never did.  In any event, Ms. Williams cannot show that any other Senior Trial Attorneys were treated more favorably, as <u>PAB did not employ any Senior Trial Attorneys at the GS-15 level throughout Ms. Williams' employment</u>.  Second, Plaintiff's retaliation claim fails because (1) some of the alleged conduct does not constitute an adverse employment action; (2) Plaintiff failed to exhaust her administrative remedies; and (3) the record abounds with evidence supporting the Agency's legitimate, non-retaliatory reasons for all

of its actions with respect to Ms. Williams, which were in direct response to her insubordination and flagrant disregard of her supervisor's directives, and Ms. Williams cannot show that these reasons were pretextual.   Third, with respect to Plaintiff's hostile work environment claim, Ms. Williams failed to exhaust her administrative remedies, and in any event, the complained-of conduct (1) has nothing to do with her race, sex, or age; and (2) does rise to the level of actionable harassment.

Pursuant to Local Rules 7(a), (c), and (h) respectively, a memorandum of points and authorities supporting this motion, a statement of genuine issues as to which there is no genuine dispute, and a proposed order consistent with the relief requested herein are attached.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


By:_____/s/_____
       Melanie L. Glickson
       Assistant United States Attorney
       36 South Charles Street
       Fourth Floor
       Baltimore, Maryland 21201
       (410) 209-4800

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIANE R. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID M. WALKER | ) | Civil Action No.: JDB-07-1452 |
| Comptroller General of the United States | ) | |
| Government Accountability Office | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

David M. Walker, Comptroller General of the United States Government Accountability Office, defendant herein, by the undersigned counsel, submits this Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. The record reflects that Plaintiff's claims should be dismissed or, in the alternative, summary judgment should be granted to Defendant in this suit brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000*e et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, because the facts alleged do not support Plaintiff's claims, there are no genuine issues in dispute, and Defendant is entitled to judgment as a matter of law.

## INTRODUCTION

This is a federal sector employment action alleging race, sex, and age discrimination under Title VII and the ADEA, as well as hostile work environment and retaliation.   Plaintiff Diane Williams is a Senior Trial Attorney, GS-14, with the Personnel Appeals Board ("PAB" or the "Board"), in the Office of the General Counsel ("PAB/OGC").   The PAB/OGC conducts investigations into complaints of alleged prohibited personnel actions brought by employees of the Government Accountability Office ("GAO" or the Agency).[1]  Ms. Williams alleges that the failure to promote her from GS-14 to GS-15 constitutes unlawful discrimination based on race (African-American), sex (female), and age (over 40).  Ms. Williams also alleges that the Board retaliated against her and subjected her to a hostile work environment based on race, age and gender.

Ms. Williams cannot adduce any evidence to support her claims.  First, with respect to the issue of the Board's alleged failure to promote her to the GS-15 level, in December 2005, the Board posted the only GS-15 vacancy that was open during Ms. Williams' employment, that of General Counsel.  Ms. Williams did not apply.  The basis of Plaintiff's non-promotion claim is an email Ms. Williams sent on January 20, 2006 to the Acting General Counsel during a 4-month transition period in which the prior General Counsel had retired and a new General Counsel had not yet been hired.

---

[1]The PAB is a quasi-independent part of the Government Accountability Office. The PAB was statutorily created under the General Accounting Office Personnel Act of 1980 ("GAOPA"), 31 U.S.C. § 731 *et seq.*  The PAB's authority combines the adjudicatory functions of its executive branch counterparts: the Merit Systems Protection Board ("MSPB"), the Equal Employment Opportunity Commission ("EEOC") and the Federal Labor Relations Authority ("FLRA").

The Acting General Counsel did not grant or deny Ms. Williams' request for a promotion to GS-15, but rather advised Ms. Williams that she should make the request to the new General Counsel when that person was selected – which Ms. Williams never did.  In any event, Ms. Williams cannot show that any other Senior Trial Attorneys were treated more favorably, as <u>PAB did not employ any Senior Trial Attorneys at the GS-15 level throughout Ms. Williams' employment</u>.  Second, Plaintiff's retaliation claim fails because (1) some of the alleged conduct does not constitute an adverse employment action; (2) Plaintiff failed to exhaust her administrative remedies; and (3) the record abounds with evidence supporting the Agency's legitimate, non-retaliatory reasons for all of its actions with respect to Ms. Williams, which were in direct response to her insubordination and flagrant disregard of her supervisor's directives, and Ms. Williams cannot show that these reasons were pretextual. Third, with respect to Plaintiff's hostile work environment claim, Plaintiff failed to exhaust her administrative remedies and, in any event, the complained-of conduct (1) has nothing to do with her race, sex, or age; and (2) does rise to the level of actionable harassment.

Consequently, all of Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) or summary judgment should be granted to Defendant pursuant to Fed. R. Civ. P. 56.

## FACTUAL BACKGROUND

## A.    Background

The Government Accountability Office is an agency within the legislative branch of the United States government.  *See* http://www.gao.gov.  Often called the "congressional watchdog," GAO investigates how the federal government spends taxpayer dollars.  *See id.*  The head of the GAO is the Comptroller General of the United States, Defendant David M. Walker.  *See id.*

The PAB is a quasi-independent part of the Government Accountability Office which was statutorily created under the General Accounting Office Personnel Act of 1980 ("GAOPA"), 31 U.S.C. § 731 *et seq.*  The Personnel Appeals Board ("PAB" or the "Board") provides services to the GAO, a legislative branch agency, similar to those that the Merit Systems Protection Board ("MSPB"), the Equal Employment Opportunity Commission ("EEOC") and the Federal Labor Relations Authority ("FLRA") provide to the executive branch agencies.  *See* Exh. 1, p. 138.[2] Specifically, the PAB adjudicates personnel disputes involving employees of the GAO.  *See* Exh. 1, p. 138.  The PAB hears cases,  issues decisions, and may order corrective or disciplinary action where appropriate.  *See* Exh. 1, p. 138.  The PAB is composed of five members appointed by the Comptroller General, though for the past decade it has operated with a quorum of three members. *See* 4 C.F.R. § 17.1; 31 U.S.C. § 75; Exh. 2,[3] ¶ 2.

---

[2] All record citations to Exh. 1 refer to the Report of Investigation ("ROI") issued by the Agency's independent investigator who was hired to investigate Ms. Williams' administrative charges.  The entire ROI is numbered, pp. 1 – 339.  The description of each ROI document is set forth at Exh. 1, pp. 5-6.

[3] Exh. 2 is the Declaration of Beth L. Don.

The PAB Office of General Counsel (PAB/OGC) investigates charges filed by employees and, if there is reasonable cause to believe that a violation of law has occurred, offers to represent the employee or applicant before the Board. *See* Exh. 1, p. 138. The independent investigations and, in some cases, representation of the GAO employee, are conducted by PAB/OGC trial attorneys. *See* Exh. 1, p. 142; 278.

The PAB employs other attorneys, aside from the trial attorneys who work in the OGC, who provide legal advice to the Board and Executive Director. *See* Exh. 1, p. 278; Exh. 2,¶ 3. Specifically, the Solicitor and Staff Attorney advise the Board members and the Executive Director on legal matters and provide procedural advice to litigants before the Board. *See* Exh. 1, p. 139. Additionally, the Office of EEO Oversight reviews equal employment opportunity practices and procedures at GAO and drafts evaluative reports and recommendations to the Agency. *See* Exh. 1, p. 139. These attorneys do not generally conduct investigations of employee complaints and do not represent employees in Board proceedings (although when the PAB/OGC has been short-staffed or otherwise experienced an emergent need for investigative work, attorneys from the Board side have occasionally performed OGC investigative work on a limited basis). *See* Exh. 2,¶ 3.

As such, the PAB is comprised of: (1) the actual Board members, who hear and adjudicate administrative complaints filed by GAO employees; (2) the PAB/OGC, which investigates and prosecutes such complaints; (3) the attorney advisers to the Board, who provide general legal advice

to the Board; and (4) the Office of EEO Oversight, which assists the Board in conducting studies and issuing reports.  *See* Exh. 2,¶ 4.

Throughout its nearly three- decade existence, no PAB employee other than Ms. Williams has ever filed a complaint of discrimination.  *See id.*

### B.    Plaintiff's Employment at PAB/OGC

Diane Williams began working as a Senior Trial Attorney at the PAB/OGC in February 1999. *See* Exh. 1, p. 240.  Prior to beginning her job at the PAB/OGC, Ms. Williams had practiced labor and employment law in a private firm and had worked at the National Labor Relations Board.  *See id.*

For approximately the first six years of her employment (1999-2005), Ms. Williams reported to the person who was General Counsel at the time, Janice Reece, SR (which is above a GS-15 level), an African-American female (D.O.B. 11/4/48).  *See* Exh. 2,¶ 5.

In September 2003, Ms. Reece wrote letters to the members of the Board recommending that the Board authorize the promotion of her two direct reports (Plaintiff and another GS-14 Senior Trial Attorney, M.J. Alexander) from GS-14 to GS-15.  *See* Exh. 1, p. 108-113.  M. J. Alexander, a Caucasian female, D.O.B. 7/17/62, worked as a GS-14 Senior Trial Attorney at the PAB/OGC, reporting to Ms. Reece, from 2000 until June 2005.  *See* Exh. 2,¶ 6.  The Board did not grant Ms. Reece's request with respect to either Plaintiff or M.J. Alexander.  *See* Exh. 1, p. 326.  The Board felt that, as of the time of Ms. Reece's request, the volume of work described did not warrant

promotion to GS-15 and the Board did not have, to date, sufficient exposure to the accomplishments of either Plaintiff or Ms. Alexander to warrant promotion to the GS-15 level. *See* Exh. 1, p. 326. Also, the Board was generally disappointed with the pace at which work in the PAB/OGC was progressing. *See* Exh. 1, p. 326. The Board did not foreclose the possibility of revisiting the issue of the recommended promotions in the future. *See* Exh. 2, ¶ 6. Ms. Reece did not renew her request during the remaining two and one-half years of her tenure with the PAB/OGC. *See* Exh. 2, ¶ 6.

Ms. Reece retired from government service with less than two weeks' notice on December 3, 2005, at which point the Board needed to hire a new General Counsel. *See* Exh. 2, ¶ 7. During a four-month period in which the Board was searching for a new General Counsel, the Board's Executive Director, Beth Don, served as Acting General Counsel, and Plaintiff reported to Ms. Don in that capacity. *See id.,* ¶ 9; Exh. 1, p. 276.

The Board hired a new General Counsel, Anne M. Wagner, GS-15, who commenced employment in April 2006 and thenceforth began supervising Ms. Williams. *See* Exh. 1, p. 324.

## C.    Plaintiff's January 20, 2006 Email to Beth Don

Shortly after Janice Reece retired in December 2005, PAB/OGC posted a GS-15 vacancy for the General Counsel position. *See* Exh. 2, ¶ 8. Plaintiff did not apply. *See id.*

On January 20, 2006, during the period in which the Agency was searching for a new General Counsel, Ms. Williams sent Acting General Counsel Beth Don an email asking for a promotion to GS-15. *See* Exh. 1, p. 295. Ms. Don responded as follows:

> Diane, I think that it is appropriate that you make your request for promotion to the new permanent General Counsel. My tenure in the position of Acting General Counsel only began on December 5, 2005 and should be over shortly with the selection of a permanent General Counsel. The vacancy announcement has closed and interviews should begin shortly.
>
> Beth

Exh. 1, p. 87. *See* Exh. 2, ¶ 10. At the time Ms. Don received the email, she had been serving as Acting General Counsel for six weeks, and Ms. Williams had been on leave for more than two weeks during that period. *See* Exh. 2, ¶ 10. Ms. Don chose not to grant or deny Ms. Williams' request because she felt that she had little direct knowledge of Plaintiff's work. *See* Exh. 1, p. 284; Exh. 2, ¶ 10. Ms. Don also felt that her tenure as Acting General Counsel would be over shortly, and it would be more appropriate for the new General Counsel to make decisions concerning the grade levels of PAB/OGC staff. *See* Exh. 1, p. 284; Exh. 2, ¶ 10.

On February 8, 2006, Plaintiff sent an email to Beth Don and other PAB members stating that she "wish[ed] to file an EEO complaint regarding the PAB's discriminatory pay policies and practices..." *See* Exh. 1, p. 299.

In early February 2006, PAB/OGC experienced a significant increase in the number of charges filed with the office. *See* Exh. 2, ¶ 14; Exh. 3.[4] Specifically, from February 5, 2006 through February 15, 2006, PAB/OGC took in 15 individual charges (compared to 14 charges taken in throughout the entire prior year). *See* Exh. 2, ¶ 14; Exh. 3. Ms. Williams had knowledge of the influx of charges, but failed to alert Beth Don as to the increase. *See* Exh. 2, ¶ 14; Exh. 3. In a letter

---

[4]Exh. 3 is a letter from Beth Don to Diane Williams dated 2/15/06.

dated February 15, 2006, Ms. Don asked Ms. Williams to keep her timely and fully informed of all matters of importance to the office going forward. *See* Exh. 2, ¶ 14; Exh. 3. Ms. Don's letter of February 15, 2006 was not placed in Ms. Williams' Official Personnel File, and it did not impact the terms and conditions of her employment. *See* Exh. 2, ¶ 13.

In April 2006, Anne Wagner was appointed to the General Counsel position and began serving in that capacity and supervising Plaintiff. *See* Exh. 1, p. 323. Ms. Williams never asked Ms. Wagner to be promoted to GS-15. *See* Exh. 1, p. 326.

Throughout Ms. Williams' employment at the PAB, the Agency never had a GS-15 Senior Trial Attorney position vacant. *See* Exh. 2, ¶ 11. Throughout Ms. Williams' employment at PAB/OGC, no Senior Trial Attorney has been hired or promoted to the GS-15 grade level. *See* Exh. 1, p. 326; Exh. 2, at ¶ 12. During Ms. Williams' employment at PAB/OGC, there were two other Senior Trial Attorneys besides Plaintiff who worked at PAB/OGC (at different times): Frank Mack (August 2006 to present) and M.J. Alexander (2000 to 2005). *See* Exh. 2,¶ 13. Both Mr. Mack and Ms. Alexander were hired at the GS-14 level and neither was ever promoted to the GS-15 level. *See* Exh. 1, p. 283; Exh. 2, ¶ 13.

The General Counsel position that was posted upon Ms. Reece's retirement in December 2005 was a GS-15 level position, but Plaintiff did not apply. *See* Exh. 1, p. 284; Exh. 2, ¶ 8.

On May 17, 2006, Plaintiff filed her first of three EEO Complaints. *See* Exh. 1, p. 32. In the May 17, 2006 Complaint, she alleges discrimination on the basis of race, sex, age, and retaliation

for prior EEO activity when her request for promotion to GS-15 pay level in January 2006 was allegedly denied. *See id.* Plaintiff also alleges that she was discriminated against on these same bases when, in February of 2006, the PAB's Executive Director allegedly gave her a written reprimand. *See id.*

### C. Plaintiff's 5-Day Suspension for Insubordination in Connection with the *Blumner v. Library of Congress* Investigation

In 2006, the PAB/OGC commenced a pilot program with the Library of Congress ("LOC" or "Library"). *See* Exh. 4[5]. Pursuant to an Interagency Agreement ("IAG"), the LOC contracted with PAB/OGC to pay for PAB/OGC to investigate a complaint of discrimination filed by a LOC employee, Linda B. Blumner. *See* Exh. 4. The *Blumner* investigation was the only case that PAB/OGC contracted to handle under the pilot program, and it was assigned to Diane Williams. *See* Exh.1, p. 261. The PAB/OGC was hoping that the pilot program would be successful, such that the IAG would be expanded in the future and grow into an ongoing relationship whereby the PAB/OGC would continue to be reimbursed for investigating Library complaints. *See* Exh. 2, ¶ 16.

On Friday, June 23, 2006, Ricardo Grijalva, Acting Director of the Office of Workforce Diversity at the Library of Congress, spoke with Beth Don about the status of the *Blumner v. LOC* investigation. *See* Exh. 1, p. 57, 94; Exh. 6;[6] Exh. 8.[7] Mr. Grijalva noted with concern that,

---

[5]Exh. 4 is the Interagency Agreement for the pilot program between the Library of Congress and the Agency.

[6]Exh. 6 is a Memo to File by Beth Don dated June 23, 2006.

[7]Exh. 8 is a Memo from Beth Don to Anne Wagner dated June 23, 2006.

although the Library had received invoices from PAB/OGC for work performed on *Blumner* over the past six months, no interviews had been conducted, no report had issued, and the interrogatories that the Library had received from Ms. Williams were deficient. *See* Exh. 1, p. 57, 94; Exh. 6; Exh. 8. Further, Mr. Grijalva indicated that the LOC maintained a policy of completing investigations within 180 days of the date of the complaint, which was set to expire on July 7, 2006 in the *Blumner* matter. *See* Exh. 1. at pp. 57-58; Exh. 6; Exh. 7[8] (GAO Order 2713.2, Subpart 6c, which states, "CRO [Civil Rights Office] shall endeavor to complete its investigation within 180 days of filing date of an individual complaint."). Ms. Williams was out of the office on an unscheduled absence on Friday, June 23, 2006, as well as the following Monday, June 26, 2006 and Tuesday, June 27, 2006. *See* Exh. 1, p. 287.

Upon learning that the Library was concerned about the investigation, Ms. Wagner, in turn, became concerned about Ms. Williams' ability to complete the *Blumner* investigation by July 7, 2006, as it was already June 23, 2006 and no interviews had taken place. *See* Exh. 1, p. 331; Exh. 5, ¶ 2. Ms. Wagner was particularly concerned that the only case that PAB/OGC was working on for the Library would not be completed in a timely manner. *See* Exh. 1, p. 329; Exh. 5, at ¶ 2.

On Monday, June 26, 2006, because the time limit for completion of the investigation (July 7, 2006) was approaching, and because Plaintiff was on an unscheduled absence, Ms. Wagner asked the legal assistant to schedule an interview with Mr. Grijalva, one of the key witnesses in the

---

[8]Exh. 7 is excerpts from GAO Order 2713.2.

*Blumner* matter.  *See* Exh. 1, p. 57, 94.  The legal assistant scheduled Mr. Grijalva's interview for June 30, 2006 at 2:00 p.m. and notified Plaintiff thereof.  *See* Exh. 1, p. 60.

Ms. Wagner called Plaintiff at home and told her that she was needed in the office in order to conduct interviews and complete the *Blumner* investigation.  *See* Exh. 1, p. 48. Ms. Wagner advised Plaintiff that she would not approve further requests for leave until the *Blumner* investigation was complete.  *See* Exh. 1, p. 329.

On June 29, 2006, Plaintiff cancelled the interview with Mr. Grijalva that had been scheduled at the direction of Ms. Wagner.  *See* Exh. 1, p. 76.  Plaintiff emailed a Library representative stating, "Please be advised that I had not planned to interview Mr. Grijalva, and certainly not tomorrow afternoon." *See* Exh. 1, p. 76.  She followed up with another email on June 30, 2006 saying that she wanted to "make sure that Mr. Grijalva is aware that I will not be interviewing him this afternoon." *See* Exh. 1, p. 76.

Plaintiff did not notify Ms. Wagner of the cancellation of the June 30, 2006 interview and did not remove it from the office calendar. *See* Exh. 1, p. 48.  Plaintiff advised the Library that she was going to provide Mr. Grijalva with written interrogatories in lieu of an in-person interview.  *See id*.

Based on Plaintiff's cancellation of the interview despite Ms. Wagner's clear directive, Ms. Wagner issued a notice proposing to suspend Plaintiff for 5 days, which the Board approved. *See* Exh. 1, pp. 43-50; 90-96.

### D.    Plaintiff Fails to Respond to her Supervisor's  Requests for Information, Resulting in a Letter of Reprimand

In early June 2006, Ms. Wagner learned of rumors that the Chair of the PAB, Michael Doheny, had an association with GRA, Inc., a private company that performed work for GAO.  *See* Exh. 1, p. 274, 336-338; Exh. 5, ¶ 3.   The allegation that Mr. Doheny, as an adjudicator, had a business relationship with a GAO contractor could have created  the appearance of a conflict of interest that would be damaging to the Board's reputation and to the "Band II" restructuring cases at issue.  *See* Exh. 1, p. 274, 336-338; Exh. 5, ¶ 4.  Specifically, GRA, Inc. was a GAO contractor in the "Band II" restructuring – a restructuring that was at the heart of a significant number of investigations that the PAB/OGC was investigating and possibly prosecuting.  *See* Exh. 5, ¶ 4.  To have the adjudicator for the Band II restructuring cases be someone who had a business relationship with a contractor in the Band II restructuring could have jeopardized the integrity of the adjudicatory process.  *See id.*

Ms. Wagner immediately tried to gather as much information as she could concerning the rumors so that she could assess their source and veracity and mitigate the potentially damaging impact of the allegation.  *See* Exh. 5, ¶ 5.  On June 6, 2006, Ms. Wagner emailed Plaintiff asking her to relay what she knew about the relationship between Mr. Doheny and GRA, Inc.  *See* Exh. 1, p. 101; Exh. 5, ¶ 6; Exh. 9.[9]  Ms. Williams did not respond.  *See* Exh. 1, p. 101; Exh. 5, ¶ 9; Exh.

---

[9]Exh. 9 consists of emails concerning Ms. Wagner's communications with Plaintiff regarding the Chair and his relationship with GRA, Inc.

9.   On June 16, 2006, Ms. Wagner counseled Plaintiff concerning her failure to provide the information as requested, and the harm that such failure could cause the Board's adjudicative process.  *See* Exh. 1, p. 101; Exh. 5, ¶ 7; Exh. 9.  Ms. Williams continued to refuse to provide the requested information, stating that she (Plaintiff) would get back to Ms. Wagner, though she never did "get back" to Ms. Wagner with the requested information.  *See* Exh. 1, pp. 101-102; Exh. 5, ¶ 7; Exh. 9.  As a consequence of Ms. Williams' refusal to provide the requested information, Ms. Wagner felt it necessary to notify all employees with matters pending before the PAB, about the allegation concerning Mr. Doheny's relationship with GRA, Inc., and the steps that had been taken in response.  *See* Exh. 1, p. 102; Exh. 5, ¶ 8; Exh. 9.  On or around July 25, 2006, Ms. Wagner again directed Plaintiff to provide her with all information as to any communication she had had with GAO employees concerning Mr. Doheny and GRA, Inc., by close of business on July 26, 2006.  *See* Exh. 1, p. 102; Exh. 5, ¶ 9; Exh. 9.  Ms. Williams did not provide the requested information by the designated deadline.   Exh. 1, p. 102; Exh. 5, ¶ 9; Exh. 9.

As a Senior Trial Attorney, Ms. Williams was expected to conduct herself in the workplace in a manner consistent with the best interests of the Board.  *See* Exh. 1, p. 274.  Ms. Wagner needed information from Plaintiff as to the extent of dissemination of information about the Chair's connection with GRA.  *See* Exh. 1, p. 337.  As such, Plaintiff had an obligation to provide Ms. Wagner with any information that she had concerning an issue that could undermine the Board's neutrality or the perception of the Board's neutrality.  *See id.*  Based on Plaintiff's refusal to comply

-14-

with Ms. Wagner's requests for information on June 6, 9, 16, and July 26, 2006, Ms. Wagner issued

a letter of reprimand dated July 26, 2006.  *See* Exh. 1, pp. 101-103; Exh. 9.

### E.    Plaintiff's EEO Complaints of August 21, 2006 and September 1, 2006

On August 21, 2006, Plaintiff filed a second EEO complaint alleging that she was being

subjected to a hostile work environment based on race, sex, and age, and retaliation.  *See* Exh. 1, p.

35.

On September 1, 2006, Plaintiff filed her third EEO complaint.  *See* Exh. 1, p. 41.  In that

complaint, she alleged that the PAB had discriminated against her by treating her August 21, 2006

EEO complaint as a new, second EEO administrative complaint as opposed to an amendment to her

first formal EEO administrative complaint dated May 17, 2006.  *See id.*

The Agency arranged for the EEOC to investigate Plaintiff's complaints as an independent

investigator.  *See* 4 C.F.R. § 28.17; Exh. 1, p. 11.  According to Plaintiff, she received a Notice of

Right to Sue on July 13, 2007.  Complaint, ¶ 3.  Plaintiff filed this action on August 10, 2007.

## LEGAL STANDARDS

### A.    *Motion to Dismiss*

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant

to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts

to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also*

*In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*); *accord Williams v. Martin-Baker Aircraft Co., Inc.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004) (complaint failed to identify who was involved in alleged fraud, referred generally to "management," and failed to explain role of named individuals in the alleged fraud). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id.*

These standards apply equally in employment cases. *See, e.g.*, *Kassner v. Second Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007); *Ofori-Tenkorang v. American Internat'l Group, Inc.*, 460 F.3d 296, 307 (2d Cir. 2006).

Dismissal in accordance with Fed.R.Civ.P. 12(b)(6) is warranted if the plaintiff-employee fails to adhere to and exhaust her administrative remedies. *See Blount v. Shalala*, 2 F. Supp. 2d 339,

341 (D. Md. 1999); *Baker v. Runyon,* 951 F. Supp. 90, 91 (E.D.N.C. 1996).[10]  Title VII and its

accompanying regulations require federal employees to exhaust their administrative remedies before

bringing an employment discrimination complaint in federal court.  *See* 42 U.S.C. §§2000*e*-16(c);

29 C.F.R. §§ 1614.407; *Brown v. General Serv. Admin.*, 425 U.S. 820, 832 (1976); *Zografov v.*

*Veterans Admin. Med. Ctr.*, 779 F.2d 967, 968-69 (4th Cir. 1985).

      **B.**     ***Motion for Summary Judgment***

      Summary judgment is appropriate when the record shows that no genuine issue exists as to

any material fact and the moving party is entitled to judgment as a matter of law.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635,

638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists, the trier of fact

must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the

non-moving party.  *Matsushita*, 475 U.S. at 587.  The mere existence of a factual dispute, however,

will not defeat summary judgment.  The non-moving party must show that the dispute is genuine

and material to the case.  That is, the factual dispute must be capable of affecting the substantive

outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact

could find for the non-moving party.  *Anderson*, 477 U.S. at 247-48; *Laningham v. U.S. Navy*, 813

---

[10] A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will be converted to a motion for summary judgment when evidence, other than the pleadings, is presented to the Court and not excluded by the Court.  Fed.R.Civ.P. 12(b).

F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Celotex Corp.*, 477 U.S. at 323 (citations omitted).

Similarly, mere conclusory allegations are not enough to survive a motion for summary judgment. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *Thrash v. Library of Congress*, 2006 U.S. Dist. LEXIS 9988 at *20 (D.D.C. Feb. 24, 2006); *Rowland v. Riley*, 5 F. Supp. 2d 1,3 (D.D.C. 1998); *Benn v. Unisys Corp.*, 176 F.R.D. 2 (D.D.C. 1997). Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") As the Supreme Court has instructed: "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

C.    *Legal Standards for Discrimination Claims under Title VII and the ADEA*

   1.    **Title VII**

-18-

The procedure for resolving a claim of discrimination such as the instant one is well-established.  Under the scheme first set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), the burdens of production first shift from employee to employer.  The plaintiff must first, by a preponderance of the evidence, establish a *prima facie* case of discrimination.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).  The Supreme Court has explained that the elements of a *prima facie* case of discrimination may differ from case to case.  *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981).  The fundamental requirement, however, is that the *prima facie* case, without additional proof to the contrary, give rise to an inference that the defendant's conduct was discriminatory.  *See Simens v. Reno*, 960 F.Supp 6, 8-9 (D.D.C. 1997).  As a general matter, therefore, to establish a *prima facie* case of discrimination, a plaintiff must demonstrate by a preponderance of the evidence that (1) he is a member of a protected group, (2) an adverse employment action took place, and (3) the unfavorable action gives rise to an inference of discrimination.  *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).

If the employee succeeds in establishing a *prima facie* case, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  *See McDonnell Douglas*, 411 U.S. at 802.  The burden on the employer is one of production, not persuasion - "it can involve no credibility determination."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 144 (2000), *quoting, Hicks*, 509 U.S. at 509.

-19-

Once it is established that both parties have met their respective burdens of production (*i.e.*, plaintiff by presenting a *prima facie* case and defendant by producing a non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant. *Hicks*, 509 U.S. at 510. Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003), *citing*, 42 U.S.C. § 2000*e*-2(m); *see also Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004). The focus for summary judgment - or trial if summary judgment has not been sought or is denied - is whether discrimination can be inferred from "the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment)." *Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1289 (D.C. Cir. 1998). Although a plaintiff need not present evidence in each of these categories to avoid summary judgment, *id.*, a plaintiff is obligated to present *substantial* and *credible* evidence of discrimination in order to survive a motion for summary judgment. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury

trial."); *Carpenter v. Federal Nat'l Mortgage Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999) (if plaintiff merely shows that the legitimate nondiscriminatory reason offered by the employer is a pretext for a decision intending to cover up an unsavory reason -- but one that is not illegal under the antidiscrimination law, the plaintiff is not entitled to try issues of fact, and summary judgment for the employer is appropriate.); *Hastie v. Henderson*, 121 F.Supp.2d, 72, 77 (D.D.C. 2000) *aff'd*, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001)("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'"); *Woodruff v. DiMario*, 164 F.Supp. 2d 1, 5 (D.D.C. 2001).[11]

Importantly, although "intermediate evidentiary burdens shift back and forth under [the framework established in *McDonnell-Douglas Corp.*, cited supra], '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (*quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 253.)

## 2.    ADEA Claims

Age discrimination claims are resolved under the burden-shifting standard set forth in *McDonnell-Douglas Corp. v. Green, cited supra. See Teneyck*, 365 F.3d at 1155. To make out a

---

[11]Additionally, there will be "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Weigert v. Georgetown University*, 120 F.Supp.2d 1, 22 (D.D.C. 2000), *quoting, Reeves v. Sanderson Plumbing Co.*, 530 U.S. 133 (2000).

*prima facie* case of discrimination under the ADEA, a plaintiff must show that she: (1) belongs to the statutorily-protected age group (over 40), (2) was qualified for the position, (3) suffered an adverse action, and (4) was disadvantaged in favor of a younger person. *Teneyck*, 365 F.3d at 1155; *May v. Shuttle, Inc.*, 129 F.3d 165, 172 (D.C. Cir. 1997), *cert. denied*, 524 U.S. 927 (1998); *Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001). The "younger person" referred to in the fourth requirement must be a person "considerably" younger than the plaintiff. *See Crockett v. Richardson*, 127 F.Supp. 2d 40, 46 (D.D.C. 2001); *see also Beeck v. Federal Express Corp.*, 81 F. Supp.2d 48, 53 (D.D.C. 2001) ("To raise an inference of discrimination by showing that a younger person was favored, a plaintiff must point to a worker with a 'significant' or 'substantial' difference in age") *(citing O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)).

### 3. *Retaliation Claims*

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (i) she engaged in protected activity, which was known by the alleged retaliator, (ii) she was subject to an adverse action, and (iii) there is a causal link between the adverse action and the protected activity. *See Paquin v. Federal National Mortgage Association*, 119 F.3d 23, 31 (D.C. Cir. 1997); *Passer v. American Chem. Soc'y,* 935 F.2d 322, 331 (D.C. Cir. 1991); *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984).

### 4. *Hostile Work Environment Based on Race, Sex, or Age*

To establish a *prima facie* case of hostile work environment harassment, a Title VII plaintiff must show that (1) plaintiff is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of plaintiff's race, sex, or age; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it. *Brooks-Miller v. England*, 357 F. Supp. 2d 197, 201 (D.D.C. 2004) (Lamberth, J.); *accord Singletary*, 351 F.3d at 526.

A workplace environment becomes "hostile" for purposes of Title VII only when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quotation omitted). When determining whether such a hostile environment exists, courts are to consider "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 21-23). "[C]onduct must be extreme to amount to a change in *the terms and conditions of employment*." *Id.* at 788 (emphasis added). *See also Faragher v. Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002).

-23-

A hostile work environment can amount to retaliation under Title VII. *See Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir.2003). To prevail on such a claim, however, a plaintiff must show that the employer subjected him to "discriminatory intimidation, ridicule, and insult" of such "sever[ity] or pervasive[ness] [as] to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (*quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). . . . *Cf. Singletary*, 351 F.3d at 528-29 (declining to grant summary judgment against an employee claiming hostile work environment where, for over a year and a half, the employee was forced to work in a poorly lit, unheated, and unventilated storage room full of brooms and boxes of debris). *Hussain v. Nicholson*, 435 F.3d 359, 366-67 (D.C. Cir. 2006). *George v. Leavitt*, 407 F.3d 405, 408, 416 (D.C. Cir. 2005) (shouted insults, undesirable assignments do not constitute hostile work environment).

## ARGUMENT

### A.    Plaintiff Failed to Exhaust her Administrative Remedies

Plaintiff brings her claims under Title VII and the ADEA. It is well-settled, indeed axiomatic, that a federal employee seeking access to federal court in an employment discrimination case under these statutes must first timely pursue and exhaust his or her administrative remedies. *See* 42 U.S.C. § 2000*e*-16(c), (e); 29 C.F.R. § 1614.407; *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003); *Bowden v. United States*, 106 F.3d 433, 437-38 (D.C. Cir. 1997); *Kizas v. Webster*, 707

F.2d 524, 544-45 (D.C. Cir. 1983) ("sine qua non" for civil action in federal court is EEO complaint formally filed with the agency charged with discrimination), *cert. denied*, 464 U.S. 1042 (1984); *Mack v. Strauss*, 134 F. Supp. 2d 103, 109-110 (D.D.C. 2001); *Powell v. Reno*, 1999 U.S. Dist. LEXIS (D.D.C. 1999) ("only after a plaintiff has timely sought counseling and exhausted his administrative remedies may this court hear the subject matter of his claim.").[12]  If a plaintiff fails to exhaust administrative remedies on a discrimination claim, the plaintiff may not raise the claim in federal district court.  *Id.*  This requirement is "not a mere technicality," rather, it is more closely akin to a condition precedent, and accordingly, the D.C. Circuit has admonished that a district court should not permit a litigant to bypass the administrative process.  *Park v. Howard University*, 71 F.3d 904, 907-09 (D.C. Cir. 1995).

Plaintiff's allegation of retaliation must be dismissed to the extent she alleges (1) she was physically confronted in a hostile or threatening manner; and (2) that the Agency questioned her coworkers concerning her whereabouts.  Such conduct is not included in any of Plaintiff's administrative charges and therefore she did not exhaust her administrative remedies with respect to these claims.  There is no justification for Ms. Williams having raised these allegations for the first time in the civil action.  To be sure, Ms. Williams is a seasoned employment lawyer, and she filed *three* separate administrative charges.  Had Ms. Williams raised these issues at the

---

[12] The D.C. Circuit has explained the "required recourse" to the EEO administrative process has "special prominence" with respect to the employment discrimination claims of federal employees.  *See Kizas v. Webster*, 707 F.2d 524, 544-45 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 1042 (1984).

administrative level, in any one of her charges, they could have been properly investigated. "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C.Cir.1995). (internal citation and quotation marks omitted).  At a minimum, the Title VII claim must arise from "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.*  The retaliation should properly be dismissed for failure to exhaust administrative remedies to the extent it alleges retaliatory conduct in the form of physical confrontation and the Agency questioning Plaintiff's co-workers.

In addition, Plaintiff's hostile work environment and retaliation claims must be dismissed for failure to exhaust administrative remedies, based on Ms. Williams' failure to seek EEO counseling with regard to these claims.  The administrative process is slightly different for GAO employees compared to executive branch employees, but GAO employees are still required to seek EEO counseling with respect to their claims.[13]  Here, other than Ms. Williams' January 20, 2006 email to Ms.

---

[13]Executive branch federal employees must follow the procedures set forth at 29 C.F.R. Part 1614.  By regulation, such an employee who believes himself or herself to be aggrieved must first seek EEO counseling within forty-five (45) days of the alleged discriminatory action and thereafter, must file a formal complaint of discrimination with the agency that allegedly engaged in discrimination, through that agency's Civil Rights or EEO Office.  29 C.F.R. §§1614.105(a)(1), 1614.106(a), 1614.105(b).  An agency EEO Office is also responsible for conciliation, conducting an investigation of the discrimination allegations, and further processing the formal complaint in the administrative process.  29 C.F.R. §§1614.105(b)(2), 1614.108, 1614.109, 1614.110(b).

GAO employees are protected by the same anti-discrimination statutes as their Executive branch counterparts, but they follow their own internal discrimination process that tracks the procedure required by Part 1614 and imposes its own counseling

Don concerning her requested promotion, <u>Plaintiff never brought any of her claims to the attention of anyone prior to filing an EEO complaint</u>.  As such, Plaintiff's retaliation and hostile work environment claims must be dismissed for failure to exhaust her administrative remedies.

### B.    The Discriminatory Non-Promotion Claim Fails as a Matter of Law

Although Plaintiff, a GS-14 Senior Trial Attorney, alleges that she was subjected to discrimination based on race, age and gender when she was not promoted to the GS-15 level, the record demonstrates that Plaintiff's claim lacks any credible evidentiary basis.  To establish a *prima facie* case of discriminatory non-promotion, a plaintiff must show that (1) she is a member of a

---

requirement.  *See* GAO Order 2713.2, Discrimination Compliant Resolution Process.  In this matter, Ms. Williams is an employee of the PAB Office of General Counsel.  Because the PAB is responsible for processing of EEO and prohibited personnel practice claims for GAO employees, the PAB's regulations provide distinct steps for PAB employees to follow in order to pursue an EEO claim.  This provision also tracks the requirements set forth in Order 2713.2:

> When an employee of the Board believes that he or she has been denied his or her right to equal employment opportunity, **the employee shall bring this matter to the attention of the Board's Executive Director or General Counsel.**  If the matter cannot be resolved witln 10 days, the Executive Director shall notify the employee of his or her right to file an EEO complaint.  The employee may consult with either the Board's Solicitor or General Counsel and seek advice with regard to procedural matters concerning the filing of an EEO charge.  The employee shall have 20 days from service of this notice to file an EEO charge with the PAB Office of General Counsel.  Upon receipt of an EEO charge, the General Counsel shall arrange with the Executive Director for processing in accordance with paragraph (b) of this section.

4 C.F.R. §28.17 (emphasis supplied).

protected class; (2) she applied for and was qualified for an available position; (3) despite her qualifications she was rejected; and (4) either someone filled the position or the position remained vacant and the employer continued to seek applicants. *See Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003), *quoting Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000); *Stella v. Mineta*, 284 F.3d 135, 139 (D.C. Cir. 2002). Defendant is entitled to summary judgment because Ms. Williams cannot establish the second, third, or fourth elements of the *prima facie* case.

### 1. *Plaintiff Never Applied for a Vacant GS-15 Position*

Plaintiff did not apply for the only GS-15 vacancy that occurred during her tenure, that is, the General Counsel vacancy that was posted in December 2005. While Plaintiff claims that she should have been promoted to the GS-15 level, the Board never had an opening for a GS-15 Senior Trial Attorney during Ms. Williams' tenure. The Senior Trial Attorneys who worked with Ms. Williams were all GS-14. None of the other Senior Trial Attorneys who worked at the PAB during Plaintiff's tenure were hired at, or promoted to, the GS-15 level. At one point, the Agency did employ two Senior Trial Attorney at the GS-15 level, but that was before Plaintiff's time – and both of those individuals were African-American females who were over 40 years of age! *See* Exh. 2, ¶ 11. As such, Plaintiff cannot show that she applied for an available GS-15 position. Moreover, the fact that no other Senior Trial Attorneys who worked with Plaintiff were GS-15 or promoted to GS-15 undermines her claim that the PAB discriminated against her.

### 2. *The Board did not Deny a Request by Ms. Williams for a Promotion*

As stated above, Plaintiff never applied for a vacant GS-15 position; instead, she asked for her position of Senior Trial Attorney to be elevated from GS-14 to GS-15 – and that request was never denied.  Ms. Williams directed her request to Beth Don, who was serving as the Acting General Counsel during the interim period between Janice Reece's retirement and the appointment of Anne Wagner as General Counsel.  Ms. Don had little direct knowledge of Ms. Williams' work. Ms. Don also felt that her tenure as Acting General Counsel would be over shortly, and it would be more appropriate for the new General Counsel to make decisions concerning the grade levels of the PAB/OGC staff.  For these reasons, Ms. Don did not act on Plaintiff's request, but asked her to direct the request to the new General Counsel.  Ms. Williams, however, never renewed her request. As such, Plaintiff cannot establish that the Agency denied her request for a promotion.

### 3.  Plaintiff Cannot Satisfy the Fourth Element of the Prima Facie Case Since There Was No Position to Be Filled

Again, the Agency never had a vacancy for a Senior Trial Attorney at the GS-15 level.  As such, Plaintiff cannot establish that the Agency filled the position or that it remained open and the Agency continued to seek applicants.  As a matter of fact, there was only one vacant GS-15 position available during Ms. Williams' employment at PAB: that of General Counsel, which was posted in December 2005.  Plaintiff never applied for that vacancy.  *See Lathram v. Snow*, 336 F.3d at 1089 (plaintiff's allegation that Defendant violated Title VII by not promoting her to the GS-14 position

was defeated by her failure to apply for that position). For these reasons, Defendant is entitled to summary judgment on Plaintiff's claim of discriminatory non-promotion.

### C.    Plaintiff Was Not Subjected To Retaliation

Title VII provides, in pertinent part, that it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A *prima facie* case alleging retaliation or reprisal under Title VII is established when the plaintiff demonstrates that (1) she engaged in protected behavior; (2) she was subject to an adverse action by her employer; and (3) there is a causal link between the adverse action and the protected activity. *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985). If plaintiff is able to establish a prima facie case of retaliation, the analysis then follows as that for a discrimination claim, *i.e.,* plaintiff has the burden of proving that defendant's actions were not taken for the reasons offered, but instead, for a retaliatory purpose. *See, e.g., Freedman v. MCI Telecommunications Corp.,* 255 F.3d 840, 844-845 (D.C. Cir. 2001).

### 1.   Some of the Alleged Retaliatory Conduct Does Not Constitute an Adverse Action as a Matter of Law

As indicated above, to make a *prima facie* case of discrimination or retaliation under Title VII, a plaintiff is required to demonstrate, among other matters, that an adverse action took place.

*Patterson v. Johnson*, --- F.3d ----, 2007 WL 3145350 (D.C. Cir. Oct. 30, 2007), *citing*, *Brown v. Brody*, 199 F.3d 446, 452-455 (D.C. Cir. 1999) ("Liability for discrimination under Title VII requires an adverse employment action. . .); *Douglas v. Pierce*, 707 F. Supp. 567 (D.D.C. 1988), *aff'd*, 906 F.2d 783 (1990); *Mitchell v. Baldrige*, 759 F.2d 80, 84 (D.C. Cir. 1985). The D.C. Circuit in *Brown* affirmed that, to state a discrimination or retaliation claim under Title VII, a plaintiff must demonstrate that he or she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown*, 199 F.3d at 457.

Indeed, the courts have firmly resisted intervening in grievances that would result in "judicial micromanagement of business practices" and are at most based on mediate employment decisions to which an employee disagrees. *See Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001), *quoting Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) and *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997); *see also Brodetski v. Duffey*, 141 F. Supp. 2d 35, 44 (D.D.C. 2001) (citations omitted) ("courts cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct"). In *Burlington Northern v. White*, 126 S.Ct. 2405 (2006), the Supreme Court stated, in pertinent part, that the "[t]he anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . .[thus,] a plaintiff must show that a reasonable employee would have

found the challenged action materially adverse, 'which. . .means it well might have dissuaded a *reasonable worker* from making or supporting a charge of discrimination.'" *Id.* at 2414-15, citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)(*quoting Washington v. Illinois Dept. of Revenue*, 420 F.3d 458, 662 (7th Cir. 2005)(emphasis added). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern*, 126 S.Ct. at 2415.

Based on these standards, some of the retaliatory conduct alleged in Paragraph 7 of the Complaint does not constitute an adverse action as a matter of law. Specifically, the following allegations do not constitute an adverse action and therefore cannot serve as the basis for a viable retaliation claim: Plaintiff's allegations that Ms. Don's February 2006 memo was a "written reprimand;" her allegations concerning Ms. Wagner telling Plaintiff, who was out of the office on unscheduled absences two weeks before the deadline for completion of the *Blumner* investigation, that she would not approve any additional leave requests for Plaintiff until she completed the *Blumner* investigation; Plaintiff's allegations that the Board "disparaged' her performance to her coworkers; and her allegations that the Board "questioned" Plaintiff's coworkers concerning her whereabouts.

First, Ms. Don's memorandum to Plaintiff dated February 15, 2006 was not a "reprimand." *See* Exh. 3. The document does not contain the word "reprimand." *See id.* It was not placed in Ms.

Williams' Official Personnel File, and it had no effect on the terms and conditions of her employment. *See* Exh. 2, ¶ 13. The memo simply reminds Plaintiff to keep Ms. Don informed of all significant matters that occurred while Ms. Don was serving as Acting General Counsel. *See* Exh. 3. The memo was warranted in light of Plaintiff's failure to advise Ms. Don of the sudden and drastic spike the number of complaints filed by employees within a very short time period in early February. *See* Exh. 2, ¶ 13. Because Ms. Don's memo of February 15, 2006 merely advises Plaintiff to keep Ms. Don abreast of significant developments, and did not give rise to any disciplinary action, it cannot constitute an adverse employment action as a matter of law. *See e.g., Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046 (8th Cir. 2007) (a reprimand is an adverse employment action for purposes of an employment discrimination claim only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse); *Nurridin v. Goldin*, 382 F.Supp.2d 79, 94 (D.D.C. 2005) (a reprimand that amounts to mere scolding, without any disciplinary action which follows, does not rise to the level of adverse employment action under Title VII).

In a similar vein, the rest of the conduct set forth above would not be considered materially adverse to a reasonable employee. Leave requests were subject to supervisory approval, and Ms. Wagner's refusal to allow Plaintiff to take additional leave when she had a crucial deadline approaching in the next two weeks was logical and reasonable under the circumstances and would not be considered materially adverse to a reasonable employee. Further, Ms. Williams' allegations

that the Board criticized her performance to her coworkers and questioned them concerning her whereabouts does not constitute an adverse employment action, since the alleged conduct did not result in any tangible employment action. *See e.g., Honeycutt v. Safeway, Inc.*, 475 F.Supp.2d 1063 (D.Colo. 2007) (increased scrutiny, criticism, and the compiling of negative reports on an employee can rise to the level of an adverse action if they adversely affect the job position); *Lumhoo v. Home Depot USA, Inc.*, 229 F.Suppp.2d 121, 150 (E.D.N.Y. 2002) (excessive scrutiny, disciplinary notices, and threats of disciplinary action do not constitute adverse employment actions under Title VII in the absence of other negative results, such as decreased pay or being placed on probation). Accordingly, certain conduct alleged by Plaintiff (allegations that Ms. Don's February 2006 memo was a "written reprimand;" allegations concerning Ms. Wagner telling Plaintiff that she would not approve any additional leave requests for Plaintiff until she completed the *Blumner* investigation; allegations that the Board "disparaged' her performance to her coworkers; and allegations that the Board "questioned" Plaintiff's coworkers concerning her whereabouts) do not constitute adverse employment actions, and therefore the retaliation claim based on such conduct fails as a matter of law.

### 2. Defendant Has Proffered Legitimate, Non-Retaliatory Reasons for its Actions, and Plaintiff Cannot Prove that Such Reasons Were Pretextual

There can be no credible dispute that all of Defendant's actions with respect to Ms. Williams are amply justified by legitimate non-retaliatory reasons. Plaintiff claims that the "Defendant had

not proposed or taken any disciplinary actions against the Plaintiff prior to her stating her intention to file an employment discrimination complaint."  Complaint, ¶ 7.  But Plaintiff filed her first complaint right around the time that Anne Wagner became her supervisor, and Ms. Williams' problems arose from the fact that she refused to accept Ms. Wagner's supervisory authority.  It was this refusal to accept Ms. Wagner's supervisory authority that resulted in disciplinary action against Ms. Williams.  For example, with regard to her 5-day suspension, Plaintiff was the only investigator handling the single investigation that was part of the pilot program.  After the client called to complain about the pace of Ms. Williams' investigation, and with only two weeks until the investigation's deadline, Ms. Williams actually canceled an interview that her supervisor had scheduled for her and directed her to conduct.  She did not speak with Ms. Wagner before canceling the interview nor did she provide a satisfactory explanation as to why she canceled it.   It is against this background that Plaintiff claims that the 5-day suspension was not for a legitimate reason, but was in retaliation for protected activity.  Clearly, Ms. Williams' actions jeopardized PAB/OGC's relationship with the Library, and the 5-day suspension was more than justified.  *See* Exh. 10.

Similarly, PAB's letter of reprimand was warranted in light of Plaintiff's insubordinate conduct in failing to respond to Ms. Wagner's requests for information on June 6, 9, 16, and July 15, 2006.  Ms. Wagner needed to know Plaintiff's knowledge concerning the Chair's relationship with GRA, Inc., so she could respond to the rumors that were circulating about an appearance of impropriety that threatened the perception of the Board's impartiality.  As a GS-14 Senior Trial

Attorney who had worked for the PAB for six years, Plaintiff was expected to understand the seriousness of the need for information and respond accordingly in the best interests of the Board. Instead, Plaintiff chose to ignore the requests and never provided Ms. Wagner with the answers she was seeking.  PAB's letter of reprimand was appropriate and in line with the GAO's guidelines of appropriate disciplinary action.  *See* Exh 10.[14]

### D.    Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law

The only incidents described in Ms. Williams' Complaint are incidents of alleged disparate treatment and retaliation.  Complaint, ¶ 7.  Therefore, these claims are more appropriately analyzed under the disparate treatment/retaliation framework discussed above, and fail to state a claim for gender, age, or racial  harassment.

In order to state a *prima facie* case of harassment, Ms. Williams must demonstrate that she was harassed *because of* her race or gender or age.  The reasoning behind this requirement is clear: Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at impermissible discrimination *because of race or sex or age*.  Plaintiff cannot establish a *prima facie* case of harassment for the simple reason that the treatment she alleges constitutes a hostile work environment had nothing to do with her race, sex, or age.

_____

[14]Exh. 10 consists of GAO Orders that were used in connection with the decisions to invoke disciplinary action against Plaintiff.

Moreover, Plaintiff's claim for hostile work environment based on race, sex, and age-based harassment because she cannot show that the allegedly harassing actions even approached the level of severity or pervasiveness necessary to qualify as a hostile environment under the applicable legal standard. *See Stewart v. Evans, Russ*, *supra*. Plaintiff alleges that she was subjected to (1) a written reprimand; (2) threats not to approve her leave requests; (3) requirements regarding work hours and leave that were not placed on other employees; (4) a 5-day suspension; (5) "disparagement" of her job performance to Plaintiff's coworkers; (6) physically confrontation in a hostile and threatening manner; (7) questions directed to her coworkers concerning her activities and whereabouts; and (8) interference with her job duties. *See* Complaint, ¶ 7. These allegations do not suffice to meet the level of severity necessary to show a *prima facie* case of harassment. Even viewed in the light most favorable to Plaintiff, the alleged conduct simply falls far short of the necessary "extreme" situation that would significantly alter Ms. Williams' working conditions as found in other cases. *See, e.g., Hussain, George*, *supra*.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court GRANT its Motion to Dismiss or, in the Alternative, for Summary Judgment, and that Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

-37-

By:_____/s/_____
      Melanie L. Glickson
      Assistant United States Attorney
      36 South Charles Street
      Fourth Floor
      Baltimore, Maryland 21201
      (410) 209-4800

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIANE R. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID M. WALKER | ) | Civil Action No.: JDB-07-1452 |
| Comptroller General of the United States | ) | |
| Government Accountability Office | ) | |
| | ) | |
| Defendant. | ) | |

_____

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 7(h), Defendant hereby submits the following statement of material facts as to which there is no genuine dispute.

1.  The Personnel Appeals Board ("PAB" or the "Board") adjudicates personnel disputes involving employees of the Government Accountability Office ("GAO"). *See* Exh. 1, p. 138. The PAB hears cases, issues decisions, and may order corrective or disciplinary action where appropriate. *See* Exh. 1, p. 138.

2.  The PAB Office of General Counsel (PAB/OGC) investigates charges filed by employees and, if there is reasonable cause to believe that a violation of law has occurred, offers to represent the employee or applicant before the Board. *See* Exh. 1, p. 138. The independent investigations and, in some cases, representation of the GAO employee, are conducted by PAB/OGC trial attorneys. *See* Exh. 1, p. 142; 278.

3.  The PAB employs other attorneys, aside from the trial attorneys who work in the OGC, who provide legal advice to the Board and Executive Director.  *See* Exh. 1, p. 278; Exh. 2,¶ 3.  These attorneys do not generally conduct investigations of employee complaints and do not represent employees in Board proceedings (although when the PAB/OGC has been short-staffed or otherwise experienced an emergent need for investigative work, attorneys from the Board side have occasionally performed OGC investigative work on a limited basis).  *See* Exh. 2,¶ 3.

4.  Throughout its nearly three decade existence, no PAB employee other than Ms. Williams has ever filed a complaint of discrimination.  *See id.*

5.  Diane Williams began working as a Senior Trial Attorney at the PAB/OGC in February 1999.  *See* Exh. 1, p. 240.

6.  For approximately the first six years of her employment (1999-2005), Ms. Williams reported to the person who was General Counsel at the time, Janice Reece, SR (which is above a GS-15 level), an African-American female (D.O.B. 11/4/48).  *See* Exh. 2,¶ 5.

7. In September 2003, Ms. Reece wrote letters to the members of the Board recommending that the Board authorize the promotion of her two direct reports (Plaintiff and another GS-14 Senior Trial Attorney, M.J. Alexander) from GS-14 to GS-15.  *See* Exh. 1, p. 108-113.

8.  M. J. Alexander, a Caucasian female, D.O.B. 7/17/62, worked as a GS-14 Senior Trial Attorney at the PAB/OGC, reporting to Ms. Reece, from 2000 until June 2005.  *See* Exh. 2,¶ 6.

9.  The Board did not grant Ms. Reece's request with respect to either Plaintiff or M.J. Alexander.  *See* Exh. 1, p. 326.  The Board felt that, as of the time of Ms. Reece's request, the volume of work described did not warrant promotion to GS-15 and the Board did not have, to date,  sufficient exposure to the accomplishments of either Plaintiff or Ms. Alexander to warrant promotion to the GS-15 level.  *See* Exh. 1, p. 326.  Also, the Board was generally disappointed with the pace at which work in the PAB/OGC was progressing.  *See* Exh. 1, p. 326.

10.   The Board did not foreclose the possibility of revisiting the issue of the recommended promotions in the future.  *See* Exh. 2, ¶ 6.  Ms. Reece did not renew her request during the remaining two and one-half years of her tenure with the PAB/OGC.  *See* Exh. 2, ¶ 6.

11.  Ms. Reece retired from government service with less than two weeks' notice on December 3, 2005, at which point the Board needed to hire a new General Counsel.  *See* Exh. 2,¶ 7.

12.   During a four-month period in which the Board was searching for a new General Counsel, the Board's Executive Director, Beth Don, served as Acting General Counsel, and Plaintiff reported to Ms. Don in that capacity.  *See id.,*¶ 9; Exh. 1, p. 276.

13.   The Board hired a new General Counsel, Anne M. Wagner, GS-15, who commenced employment in April 2006 and thenceforth began supervising Ms. Williams. *See* Exh. 1, p. 324.

14.   Shortly after Janice Reece retired in December 2005, PAB/OGC posted a GS-15 vacancy for the General Counsel position.  *See* Exh. 2, ¶ 8.  Plaintiff did not apply.  *See id.*

15.  On January 20, 2006, during the period in which the Agency was searching for a new General Counsel, Ms. Williams sent Acting General Counsel Beth Don an email asking for a promotion to GS-15. *See* Exh. 1, p. 295. Ms. Don responded as follows:

> Diane, I think that it is appropriate that you make your request for promotion to the new permanent General Counsel. My tenure in the position of Acting General Counsel only began on December 5, 2005 and should be over shortly with the selection of a permanent General Counsel. The vacancy announcement has closed and interviews should begin shortly.
>
> Beth

Exh. 1, p. 87. *See* Exh. 2,¶ 10.

16.  At the time Ms. Don received the email, she had been serving as Acting General Counsel for six weeks, and Ms. Williams had been on leave for more than two weeks during that period. *See* Exh. 2, ¶ 10.

17.  Ms. Don chose not to grant or deny Ms. Williams' request because she felt that she had little direct knowledge of Plaintiff's work. *See* Exh. 1, p. 284; Exh. 2, ¶10. Ms. Don also felt that her tenure as Acting General Counsel would be over shortly, and it would be more appropriate for the new General Counsel to make decisions concerning the grade levels of PAB/OGC staff. *See* Exh. 1, p. 284; Exh. 2,¶ 10.

18.  On February 8, 2006, Plaintiff sent an email to Beth Don and other PAB members stating that she "wish[ed] to file an EEO complaint regarding the PAB's discriminatory pay policies and practices..." *See* Exh. 1, p. 299.

19.  In early February 2006, PAB/OGC experienced a significant increase in the number of charges filed with the office.  *See* Exh. 2, ¶ 14; Exh. 3.[1]  Specifically, from February 5, 2006 through February 15, 2006, PAB/OGC took in 15 individual charges (compared to 14 charges taken in throughout the entire prior year).  *See* Exh. 2, ¶ 14; Exh. 3.

20.  Ms. Williams had knowledge of the influx of charges, but failed to alert Beth Don as to the increase.  *See* Exh. 2, ¶ 14; Exh. 3.

21.  In a letter dated February 15, 2006, Ms. Don asked Ms. Williams to keep her timely and fully informed of all matters of importance to the office going forward.  *See* Exh. 2, ¶ 14; Exh. 3.

22.  Ms. Don's letter of February 15, 2006 was not placed in Ms. Williams' Official Personnel File, and it did not impact the terms and conditions of her employment.  *See* Exh. 2, ¶ 13.

23.  In April 2006, Anne Wagner was appointed to the General Counsel position and began serving in that capacity and supervising Plaintiff.  *See* Exh. 1, p. 323.

24.  Ms. Williams never asked Ms. Wagner to be promoted to GS-15.  *See* Exh. 1, p. 326.

25.  Throughout Ms. Williams' employment at the PAB, the Agency never had a GS-15 Senior Trial Attorney position vacant.  *See* Exh. 2, ¶ 11.

---

[1]Exh. 3 is a letter from Beth Don to Diane Williams dated 2/15/06.

26.  Throughout Ms. Williams' employment at PAB/OGC, no Senior Trial Attorney has been hired or promoted to the GS-15 grade level.  *See* Exh. 1, p. 326; Exh. 2, at ¶ 12.

27.  During Ms. Williams' employment at PAB/OGC, there were two other Senior Trial Attorneys besides Plaintiff who worked at PAB/OGC (at different times): Frank Mack (August 2006 to present) and M.J. Alexander (2000 to 2005).  *See* Exh. 2,¶ 13.  Both Mr. Mack and Ms. Alexander were hired at the GS-14 level and neither was ever promoted to the GS-15 level.  *See* Exh. 1, p. 283; Exh. 2, ¶ 13.

28.  The General Counsel position that was posted upon Ms. Reece's retirement in December 2005 was a GS-15 level position, but Plaintiff did not apply.  *See* Exh. 1, p. 284; Exh. 2, ¶ 8.

29.  On May 17, 2006, Plaintiff filed her first of three EEO Complaints.  *See* Exh. 1, p. 32.  In the May 17, 2006 Complaint, she alleges discrimination on the basis of race, sex, age, and retaliation for prior EEO activity when her request for promotion to GS-15 pay level in January 2006 was allegedly denied.  *See id.*  Plaintiff also alleges that she was discriminated against on these same bases when, in February of 2006, the PAB's Executive Director allegedly gave her a written reprimand. *See id.*

30.  In 2006, the PAB/OGC commenced a pilot program with the Library of Congress ("LOC" or "Library").  *See* Exh. 4[2].

---

[2]Exh. 4 is the Interagency Agreement for the pilot program between the Library of Congress and the Agency.

31.  Pursuant to an Interagency Agreement ("IAG"),  the LOC contracted with PAB/OGC to pay for PAB/OGC to investigate a complaint of discrimination filed by a LOC employee, Linda B. Blumner.  *See* Exh. 4.

32.  The *Blumner* investigation was the only case that PAB/OGC contracted to handle under the pilot program, and it was assigned to Diane Williams.  *See* Exh.1, p. 261.

33.  The PAB/OGC was hoping that the pilot program would be successful, such that the IAG would be expanded in the future and grow into an ongoing relationship whereby the PAB/OGC would continue to be reimbursed for investigating Library complaints.  *See* Exh. 2, ¶ 16.

34.  On Friday, June 23, 2006, Ricardo Grijalva, Acting Director of the Office of Workforce Diversity at the Library of Congress, spoke with Beth Don about the status of the *Blumner v. LOC* investigation.  *See* Exh. 1, p. 57, 94; Exh. 6;[3] Exh. 8.[4]

35. Mr. Grijalva noted with concern that, although the Library had received invoices from PAB/OGC for work performed on *Blumner* over the past six months, no interviews had been conducted, no report had issued, and the interrogatories that the Library had received from Ms. Williams were deficient.  *See* Exh. 1, p. 57, 94; Exh. 6; Exh. 8.

36.  Further, Mr. Grijalva indicated that the LOC maintained a policy of completing investigations within 180 days of the date of the complaint, which was set to expire on July

---

[3]Exh. 6 is a Memo to File by Beth Don dated June 23, 2006.

[4]Exh. 8 is a Memo from Beth Don to Anne Wagner dated June 23, 2006.

7, 2006 in the *Blumner* matter. *See* Exh. 1. at pp. 57-58; Exh. 6; Exh. 7[5] (GAO Order 2713.2, Subpart 6c, which states, "CRO [Civil Rights Office] shall endeavor to complete its investigation within 180 days of filing date of an individual complaint.").

37. Ms. Williams was out of the office on an unscheduled absence on Friday, June 23, 2006, as well as the following Monday, June 26, 2006 and Tuesday, June 27, 2006. *See* Exh. 1, p. 287.

38. Upon learning that the Library was concerned about the investigation, Ms. Wagner, in turn, became concerned about Ms. Williams' ability to complete the *Blumner* investigation by July 7, 2006, as it was already June 23, 2006 and no interviews had taken place. *See* Exh. 1, p. 331; Exh. 5, ¶ 2. Ms. Wagner was particularly concerned that the only case that PAB/OGC was working on for the Library would not be completed in a timely manner. *See* Exh. 1, p. 329; Exh. 5, at ¶ 2.

40. On Monday, June 26, 2006, because the time limit for completion of the investigation (July 7, 2006) was approaching, and because Plaintiff was on an unscheduled absence, Ms. Wagner asked the legal assistant to schedule an interview with Mr. Grijalva, one of the key witnesses in the *Blumner* matter. *See* Exh. 1, p. 57, 94.

41. The legal assistant scheduled Mr. Grijalva's interview for June 30, 2006 at 2:00 p.m. and notified Plaintiff thereof. *See* Exh. 1, p. 60.

42. Ms. Wagner called Plaintiff at home and told her that she was needed in the office in order to conduct interviews and complete the *Blumner* investigation. *See* Exh. 1, p. 48.

---

[5]Exh. 7 is excerpts from GAO Order 2713.2.

Ms. Wagner advised Plaintiff that she would not approve further requests for leave until the *Blumner* investigation was complete. *See* Exh. 1, p. 329.

43. On June 29, 2006, Plaintiff cancelled the interview with Mr. Grijalva that had been scheduled at the direction of Ms. Wagner. *See* Exh. 1, p. 76. Plaintiff emailed a Library representative stating, "Please be advised that I had not planned to interview Mr. Grijalva, and certainly not tomorrow afternoon." *See* Exh. 1, p. 76. She followed up with another email on June 30, 2006 saying that she wanted to "make sure that Mr. Grijalva is aware that I will not be interviewing him this afternoon." *See* Exh. 1, p. 76.

44. Plaintiff did not notify Ms. Wagner of the cancellation of the June 30, 2006 interview and did not remove it from the office calendar. *See* Exh. 1, p. 48. Plaintiff advised the Library that she was going to provide Mr. Grijalva with written interrogatories in lieu of an in-person interview. *See id*.

45. Based on Plaintiff's cancellation of the interview despite Ms. Wagner's clear directive, Ms. Wagner issued a notice proposing to suspend Plaintiff for 5 days, which the Board approved. *See* Exh. 1, pp. 43-50; 90-96.

46. In early June 2006, Ms. Wagner learned of rumors that the Chair of the PAB, Michael Doheny, had an association with GRA, Inc., a private company that performed work for GAO. *See* Exh. 1, p. 274, 336-338; Exh. 5, ¶ 3.

47. The allegation that Mr. Doheny, as an adjudicator, had a business relationship with a GAO contractor could have created the appearance of a conflict of interest that would be damaging to the Board's reputation and to the "Band II" restructuring cases at issue. *See* Exh. 1, p. 274, 336-338; Exh. 5, ¶ 4.

48.  Specifically, GRA, Inc. was a GAO contractor in the "Band II" restructuring – a restructuring that was at the heart of a significant number of investigations that the PAB/OGC was investigating and possibly prosecuting.  *See* Exh. 5, ¶ 4.  To have the adjudicator for the Band II restructuring cases be someone who had a business relationship with a contractor in the Band II restructuring could have jeopardized the integrity of the adjudicatory process.  *See id.*

49.  Ms. Wagner immediately tried to gather as much information as she could concerning the rumors so that she could assess their source and veracity and mitigate the potentially damaging impact of the allegation.  *See* Exh. 5, ¶ 5.

50.  On June 6, 2006, Ms. Wagner emailed Plaintiff asking her to relay what she knew about the relationship between Mr. Doheny and GRA, Inc.  *See* Exh. 1, p. 101; Exh. 5, ¶ 6; Exh. 9.[6]  Ms. Williams did not respond.  *See* Exh. 1, p. 101; Exh. 5, ¶ 9; Exh. 9.

51.  On June 16, 2006, Ms. Wagner counseled Plaintiff concerning her failure to provide the information as requested, and the harm that such failure could cause the Board's adjudicative process.  *See* Exh. 1, p. 101; Exh. 5, ¶ 7; Exh. 9.

52.  Ms. Williams continued to refuse to provide the requested information, stating that she (Plaintiff) would get back to Ms. Wagner, though she never did "get back" to Ms. Wagner with the requested information.  *See* Exh. 1, pp. 101-102; Exh. 5, ¶ 7; Exh. 9.

---

[6]Exh. 9 consists of emails concerning Ms. Wagner's communications with Plaintiff regarding the Chair and his relationship with GRA, Inc.

53. As a consequence of Ms. Williams' refusal to provide the requested information, Ms. Wagner felt it necessary to notify all employees with matters pending before the PAB, about the allegation concerning Mr. Doheny's relationship with GRA, Inc., and the steps that had been taken in response. *See* Exh. 1, p. 102; Exh. 5, ¶ 8; Exh. 9.

54. On or around July 25, 2006, Ms. Wagner again directed Plaintiff to provide her with all information as to any communication she had had with GAO employees concerning Mr. Doheny and GRA, Inc., by close of business on July 26, 2006. *See* Exh. 1, p. 102; Exh. 5, ¶ 9; Exh. 9. Ms. Williams did not provide the requested information by the designated deadline. Exh. 1, p. 102; Exh. 5, ¶ 9; Exh. 9.

55. Based on Plaintiff's refusal to comply with Ms. Wagner's requests for information on June 6, 9, 16, and July 26, 2006, Ms. Wagner issued a letter of reprimand dated July 26, 2006. *See* Exh. 1, pp. 101-103; Exh. 9.

56. On August 21, 2006, Plaintiff filed a second EEO complaint alleging that she was being subjected to a hostile work environment based on race, sex, and age, and retaliation. *See* Exh. 1, p. 35.

57. On September 1, 2006, Plaintiff filed her third EEO complaint. *See* Exh. 1, p. 41. In that complaint, she alleged that the PAB had discriminated against her by treating her August 21, 2006 EEO complaint as a new, second EEO administrative complaint as opposed to an amendment to her first formal EEO administrative complaint dated May 17, 2006. *See id.*

58.  The Agency arranged for the EEOC to investigate Plaintiff's complaints as an independent investigator.  *See* 4 C.F.R. § 28.17; Exh. 1, p. 11.  According to Plaintiff, she received a Notice of Right to Sue on July 13, 2007.  Complaint, ¶ 3.  Plaintiff filed this action on August 10, 2007.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


By:_____/s/_____
      Melanie L. Glickson
      Assistant United States Attorney
      36 South Charles Street
      Fourth Floor
      Baltimore, Maryland 21201
      (410) 209-4800

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DIANE R. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DAVID M. WALKER** | ) | **Civil Action No.: JDB-07-1452** |
| **Comptroller General of the United States** | ) | |
| **Government Accountability Office** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## NOTICE OF FILING OF VOLUMINOUS EXHIBITS

Defendant, by the undersigned counsel, hereby gives notice of the filing of a voluminous exhibit which is Exh. 1 to Defendant's Memorandum in Support of its Motion to Dismiss or in the Alternative, for Summary Judgment, exists only in paper format, and is 339 pages long.  The exhibit will be filed with the Clerk's Office in paper format.

I certify that within 24 hours of the filing of this Notice, I will file and serve paper copies of the documents identified above.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:_____/s/_____
Melanie L. Glickson

Assistant United States Attorney
Federal Bar No. 28484
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800 (telephone)
(410) 962-2310 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIANE R. WILLIAMS,                          :

        Plaintiff,                       :

      v.                                     :

DAVID M. WALKER                             :        Civil Action No.: JDB-07-1452
Comptroller General of the United States :
Government Accountability Office            :
                                            :
        Defendant.                       :
                                ...oOo...

### DECLARATION OF BETH L. DON

I, Beth L. Don, declare as follows:

1. I am the Executive Director of the Personnel Appeals Board ("PAB" or "Board"). I have served in that capacity since late 1988. Prior to that, I was the Board's first Director of EEO Oversight.

2. The PAB is composed of five members appointed by the Comptroller General, though for the past decade it has operated with a quorum of three members.

3. Aside from the trial attorneys who work in the PAB Office of General Counsel (PAB/OGC), the PAB employs other attorneys, who provide legal advice to the Board and to me as Executive Director. These attorneys do not generally conduct investigations of employee complaints and do not represent employees in Board proceedings (although when the PAB/OGC has been short-staffed or otherwise experienced an emergent need for investigative work, attorneys from the Board side have occasionally performed PAB/OGC investigative work in Library of Congress matters on a limited basis).

4. The PAB is comprised of: (1) the actual Board members, who hear and adjudicate administrative complaints filed by GAO employees; (2) the PAB/OGC, which investigates and prosecutes such complaints; (3) the attorney advisers to the Board, who provide general legal advice to the Board; and (4) the Office of EEO Oversight which

assists the Board in conducting studies and issuing reports. Throughout its nearly three decade existence, no PAB employee other than Ms. Williams has ever filed a complaint of discrimination.

5. For approximately the first six years of her employment (1999-2005), Ms. Williams reported to the person who was General Counsel at the time, Janice Reece, (above a GS-15 rate), an African-American female (D.O.B. 11/4/48).

6. M. J. Alexander, a Caucasian female (D.O.B. 7/17/62), worked as a GS-14 Senior Trial Attorney at the PAB/OGC, reporting to Ms. Reece, from 2000 until June 2005. In September 2003, Ms. Reece wrote letters to the members of the Board recommending that the Board authorize the promotion of her two direct reports (Plaintiff and another GS-14 Senior Trial Attorney, M.J. Alexander) from GS-14 to GS-15. The Board did not grant Ms. Reece's request with respect to either Plaintiff or M.J. Alexander. The Board felt that, as of the time of Ms. Reece's request, the volume of work described did not warrant promotion and the Board did not have, to date, sufficient exposure to the accomplishments of either Plaintiff or Ms. Alexander to warrant promotion to the GS-15 level. Also, the Board was generally disappointed with the pace at which work in the PAB/OGC was progressing. The Board did not foreclose the possibility of revisiting the issue of the recommended promotions in the future. Ms. Reece did not renew her request during the remaining two and one-half years of her tenure with the PAB/OGC.

7. Janice Reece retired from government service with less than two weeks' notice on December 3, 2005, at which point the Board needed to hire a new General Counsel.

8. In December 2005, shortly after Janice Reece announced her retirement, the PAB posted a GS-15 vacancy for the General Counsel position. Plaintiff did not apply.

9. During a four-month period in which the Board was in the process of hiring a permanent General Counsel, I served as Acting General Counsel, and Ms. Williams reported to me in that capacity.

10.  I received a very brief email from Ms. Williams on January 20, 2006 asking for a promotion to GS-15.  At the time I received the email, I had been serving as Acting General Counsel for six weeks, and Ms. Williams had been on leave for more than two weeks during that time period.   I had little direct knowledge of Ms. Williams' work.  I also knew that my tenure as Acting General Counsel would be over shortly, and it would be more appropriate for the new permanent General Counsel to make decisions concerning the grade levels of PAB/OGC staff .

11.  Throughout Ms. Williams' employment at the PAB/OGC, the Office never had a vacant GS-15 Senior Trial Attorney position.  At one point, the Agency did employ two Senior Trial Attorney at the GS-15 level, but that was before Plaintiff's time – and both of those individuals were African-American females who were over 40 years of age

12.  Throughout Ms. Williams' employment at PAB/OGC, no Senior Trial Attorney has been hired at or promoted to the GS-15 grade level.

13.  During Ms. Williams' employment at PAB/OGC, there were two other Senior Trial Attorneys besides Plaintiff who worked at PAB/OGC (at different times): Frank Mack (August 2006 to present) and M.J. Alexander (2000 to 2005).  Both Mr. Mack and Ms. Alexander were hired at the GS-14 level and neither was ever promoted to the GS-15 level.

14.  When I became Acting General Counsel, I met with Ms. Williams to discuss how I wanted to the office to run.  I specifically advised Ms. Williams to keep me informed about matters of significance with respect to the day-to-day business of the PAB/OGC.  From February 5, 2006 through February 15, 2006, PAB/OGC took in 15 individual charges (compared to 14 charges taken in throughout the entire prior year).  Ms. Williams had knowledge of the influx of charges, but failed to alert me as to the increase.

15. In a letter dated February 15, 2006, I reminded Ms. Williams of the importance of keeping me timely and fully informed of all matters of importance to the office going forward. My letter was not meant as a reprimand; it was not captioned "reprimand"; it was not placed in Ms. Williams ' Official Personnel File: and it did not in any way impact the terms and conditions of Ms. Williams' employment.

16. With respect to the Interagency Agreement entered into between the PAB and the Library of Congress, the PAB was hoping that the pilot program would be successful, such that the IAG would be expanded in the future and grow into an ongoing relationship whereby the PAB would continue to be reimbursed for investigating Library complaints.

I have reviewed the information set forth in this Affidavit and, to the best of my information and belief, based upon information available to me in my official capacity, the answers are correct. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_Beth L. Don_                    _February 11, 2008_

Beth L. Don
Executive Director
Personnel Appeals Board



Personnel
Appeals
Board

**Office of General Counsel**

February 15, 2006

To      :    Diane Williams
             Senior Trial Attorney

From    :    Beth Don
             Acting General Counsel

When I became Acting General Counsel, I met with you to discuss how I wanted the office to run during what I anticipated would be my short tenure as PAB/GC.  I explained what my role would be as well as my expectations for your responsibilities during this period.  On the one hand, I made it clear that I preferred not to be involved in matters that might cause me to have to recuse myself later should cases come to the Board.  On the other hand, I made it clear that ensuring that employees had all the rights granted to them was paramount, and if, in order to provide employees with those rights, I had to recuse myself at a later time, that's what I would have to do.  I specifically told you that I was relying on your judgment as a GS-14 to keep me informed about matters in which I needed to be involved.

Last year, PAB/OGC took in 14 charges.  Within the last ten days PAB/OGC has taken in 15 individual charges.  That is information that you should have immediately shared with me, but you did not.  There will be a PAB/OGC staff meeting tomorrow in my GC office at 11:30 am to discuss how these charges (and any subsequent charges) will be processed and by whom.  Please come to the meeting with relevant information about each new charge, including whether it is from headquarters or, if not, which region, which unit, what the allegation is, and the status of the charge.

On a general note, again, I expect you to keep me timely and fully informed of all matters of importance to our office.

| 1: AGENCY/SRVC UNIT REQUEST #: | Library of Congress | 3. EFFECTIVE DATE: 08/10/2005 |
|---|---|---|
| 2. ESTIMATED AMOUNT: **$15,000.00** | | 4. EXPIRATION DATE: 08/09/2006 |

**6. SERVICE(S) TO BE PERFORMED: (In accordance with the Statement of Work Section)**

The U.S. Government Accountability Office (hereinafter "GAO") and the Library of Congress (hereinafter "agency") hereby agree that, in accordance with the terms of this Agreement and the Economy Act under Title 31 U.S.C. & 1535, the GAO Personnel Appeals Board (hereinafter "GAO/PAB") shall assume responsibility for the processing of the following individual's complaint of discrimination filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII) and the Age Discrimination in Employment Act of 1967 with the Library of Congress.

**7. AUTHORITY. (This agreement is entered into pursuant to the following authority and incorporates by reference any and all related implementing regulations and Office of Management & Budget circulars) (Check all that apply):**

☐ Revolving Fund, 2 U.S.C. 182      ☒ Economy Act, 31 U.S.C. 1535-1536      ☐ Other (specify)

| | |
|---|---|
| a. Name and Address (do not abbreviate): **Library of Congress Office of Workforce Diversity 101 Independence Ave, SE, Room 624 Washington, DC 20540** | a. Name and Address (do not abbreviate): **Government Accountability Office Personnel Appeals Board 441 G Street, NW, Room 6B40A Washington, DC 20548** |
| b. Program Office Contact Name and Telephone Number: **Gilbert Sandate      (202) 707-4170** | b. Program Office Contact Name and Telephone Number: **Beth Don      (202) 512-7517** |
| c. Program Office Fax:      (202) 252-2043 | c. Program Office Fax:      (202) 512-7525 |
| d. Email Address (if available):      **gsan@loc.gov** | d. Email Address (if available):      **donb@gao.gov** |

| | |
|---|---|
| a. Agency Location Code (ALC): **03-00-0001** | a. Agency Location Code (ALC): **05-00-0001** |
| b. DUNS: **788790434** Treasury Symbol: **0350101** | b. DUNS: **00-3251949** Treasury Symbol: **0550107** |
| c. Obligation Number: | c. Obligation Number: **BDK250013** |
| d. Accounting Data: **05 - 010002 - 1010000 - 2515** | d. Accounting Data: **05 - GAO - 1910** |
| e. Finance Office/Billing Address (do not abbreviate): **Library of Congress 101 Independence Ave, SE, Room 624 Washington, DC 20540** | e. Finance Office/Billing Address (do not abbreviate): **Government Accountability Office 441 G Street, NW, Room 6B40A Washington, DC 20548** |
| f. Finance Office Contact Name and Telephone Number: **Jeanette M. Leach (202) 707-0064** | f. Finance Office Contact Name and Telephone Number: **India Jenkins (202) 252-5619** |
| g. Finance Office Fax Number:      (202) 252-2043 | g. Finance Office Fax Number:      (202) 512-3446 |

**8. AUTHORIZED APPROVALS**

| Program Office Name (printed) & Signature | Date: 8/8/05 | Program Office Name (printed) & Signature  **Sallyane Harper      Cocurrence Beth Don Chief Administrative Officer  Executive Director** | Date: |
|---|---|---|---|
| Finance/Contracting Office Name (printed) & Signature (For intra-agency leave blank) **Kathy B. Murphy**  *Jeanette M. Leach* **Budget Officer & Acting Chief Financial Officer** | Date: 8/8/05 | Finance/Contracting Office Name (printed) & Signature  **India Jenkins Budget Office** | Date: |

1702 (2003/06)                                                                 Page 1

**CONDITIONS OF AGREEMENT**

1. **Funding.** Upon the completion of GAO/PAB counseling, GAO/PAB will submit a billing for any costs incurred. Payment shall be made no later than 30 calendar days from the billing.

2. **Duties.** The respective duties of the performing and the requesting agency are set out in the attached Statement of Work.

3. **Compliance with Applicable Laws.** Both parties agree to comply with authorities cited in this agreement. Both parties also agree to comply with any laws or regulations that apply. Specifically, the recipient agrees to comply fully with LOC requirements to avoid statistical disclosure and agrees to make no attempts to identify individuals through data manipulation. Unless otherwise mutually agreed to, the data are supplied solely for statistical research. The recipient further agrees to safeguard any data containing personal identifiers in accordance with LOC's privacy and security standards. Any proposed publication for public information of data delivered under this agreement shall be approved by LOC prior to publication.

4. **Amendments or modifications of the agreement.** Any amendments or modifications of this Agreement must be made in writing and agreed to by both the performing agency and the requesting agency. The other party must respond to the proposed change within **30** days of receipt of the proposed change. Individual fiscal year agreements may be renewed by the execution of a new Form 1702, provided that sufficient funds are available to the requesting agency for obligation.

5. **Publication or Sharing Results.** If either party publishes or shares any results coming within the sphere of its responsibility, they *shall submit a proposed release to the cooperating party for prior review.* Publication may be joint or independent, as agreed upon, always giving due credit to the cooperation and recognizing within proper limits the rights of the individuals doing the work. Software and documents may not be shared or used beyond the scope specified in the Statement of Work.

6. **Disputes.** The performing and requesting agency employees responsible for the administration of this agreement are the program office contacts identified in block 8 on the Form 1702. Disputes must be submitted in writing to either of these persons. Any disputes that are not resolved at this level may be referred to the appropriate program director within the performing agency whose decision is final.

7. **Terminations.** Either the performing agency or the requesting agency may terminate this agreement at any time by sending written notice to the program office contact in writing **60** days prior to the effective date of the termination. The performing agency will be entitled to sufficient funds as necessary to cover the expenses incurred for terminating this Agreement and will provide a final accounting of the expenses to the requesting agency **30** days after receipt of the termination notice.

8. **Property.** Property purchased from funds supplied under this agreement shall become an asset of the agency bearing the cost of the acquisition (The Economy Act of 1932, as amended (31 U.S.C. 1535-1536, 33 Comp Gen. 565)), unless otherwise agreed to by the cooperating parties.

9. **Duration of the agreement.** This agreement will remain in effect from the date of full execution through the expiration date stated in section 4, or until amended by mutual consent. If **performance** of this agreement is contemplating extending beyond the dates specified above, a new Form 1702 must be executed.

10. **Whole Agreement.** This agreement, including the attached Statement of Work, constitutes the entire agreement between the performing agency and the requesting agency regarding the subject matter of this Agreement.

# INTERAGENCY AGREEMENT

## BETWEEN

## THE LIBRARY OF CONGRESS

## AND

## THE U.S. GOVERNMENT ACCOUNTABILITY OFFICE

A.      The U.S. Government Accountability Office (hereinafter "GAO") and The Library of Congress (hereinafter "agency") hereby agree that, in accordance with the terms of this Agreement and the Economy Act under Title 31 U.S.C. § 1535, the GAO Personnel Appeals Board (hereinafter "GAO/PAB") shall assume responsibility for the processing of the following individual complaint of discrimination filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII) and the Age Discrimination in Employment Act of 1967 with the Library of Congress:

[Linda B. Blumner, Complainant, EEO Case No. 05-81]

B.      Responsibilities of the GAO/PAB

With respect to the matters identified in Part A above, and in accordance with GAO's Operations Manual, Order 2713.2 entitled "Discrimination Complaints Process", the agency herein officially delegates authority to the GAO/PAB as follows:

1.      Consistent with GAO's Operations Manual, Order 2713.2, the GAO/PAB will by delegation to its Office of General Counsel (hereinafter "PAB/OGC") appoint and detail an EEO Counselor to advise the complainant of appropriate administrative and court deadlines, her duty to mitigate damages, and facilitate the informal resolution of the complaint among other things.  In addition, the counselor will conduct an informal inquiry into the allegations of discrimination raised in the complaint.

2.      The Counselor shall keep a record of his/her counseling activities and shall conduct a final interview with the complainant not later than 30 days after the initial counseling date.  If, at that time, the Counselor has not resolved the matter to the satisfaction of the parties, he/she shall notify the complainant, in writing, of his/her right to file a complaint within 15 days of receipt of the notice of final interview pursuant to Chapter 3, §1 (d) of Order 2713.2.

3.      When advised that a complaint of discrimination has been filed in accordance with Chapter 3, §4 of Order 2713.2, the Counselor shall submit to the PAB General Counsel a written report concerning the issues discussed and actions taken during counseling.  A copy of the Counselor's report will be provided to the complainant.  Upon notification that a formal complaint of discrimination has been filed pursuant to the Notice of Final Interview, the GAO/PAB through its Office of General Counsel shall determine whether to dismiss or accept the complaint for processing consistent with Chapter 3, §5.  If the complaint is accepted, pursuant to the provisions of Order 2713.2, the GAO/PAB through its Office of General Counsel shall prepare an acceptance letter which sets forth the issues and bases of discrimination accepted for processing, as well as those dismissed, if any, and the legal basis for same.  Following the issuance of the acceptance letter, the PAB Office of General Counsel shall conduct an investigation into the alleged discrimination, which may include, but not necessarily be limited to, the gathering of evidentiary materials, including the taking of sworn statements of relevant witnesses. Upon completion of the investigation, the PAB Office of General Counsel shall issue a Final Report.

4.    Any subsequent adjudication of this matter shall be in accordance with the IAG (dated _____) and Memorandum of Understanding (dated _____) entered into between LOC and GAO.

C.    Responsibilities of the Agency

With respect to the complaint identified under Part A of this Agreement, the agency agrees to assume the following responsibilities:

1.    The agency shall transmit the complaint file to the GAO/PAB for complaint processing within **seven calendar days** of the date that this Agreement is signed by the GAO and GAO/PAB and received by the agency by hand delivery, fax or mail, whichever is earlier.

2.    The agency shall cooperate fully with the GAO/PAB and all personnel assigned to the complaint covered by this Agreement.  This cooperation shall include, but not be limited to, the following:

a.    Promptly responding and cooperating with GAO/PAB to any written or oral requests for information;

b.    Designating and making available an agency official who is authorized to discuss and enter into a voluntary settlement of the complaint.

3.    The agency shall pay, as provided below and in accordance with Parts D and E of this Agreement, all costs associated with the processing of this complaint to include the following:

a.    Reimbursement to the GAO for all time spent and costs incurred by assigned GAO/PAB personnel and/or contractors to complete the processing of this individual complaint;

b.    Payment for all other costs, as may be necessary, associated with the GAO/PAB hearings or an appeal and issuance of all decisions on the complaint.  It is agreed that, for the time rendered in conducting proceedings, preparing, and issuing decisions under 4 C.F.R. Part 28, salary plus benefits and related expenses, including associated administrative expenses, will be reimbursed to the GAO.  Expenses shall include costs of the staff time and use of equipment related to the proceedings. Documents shall be served by the GAO/PAB. An invoice with detailed charges for reimbursement will be submitted to the agency by the GAO payroll/accounting office.

D.    GAO/PAB Right to Determine Appropriate Contract for EEO Counselor, EEO Investigator or Administrative Judge and Monitor Performance

The GAO/PAB reserves the sole right to determine the appropriate appointment of an EEO Counselor, EEO Investigator or an Administrative Judge to issue a recommended decision in this complaint and to monitor the performance of such contractors in performing these functions.

E.    Estimated Amount for Services and Effective Date of Performance

The estimated amount of the service to be performed is $15,000. The effective date of the planned performance by the GAO/PAB will begin on August 10, 2005.

F.    Procedure for Reimbursement

1.    Upon the completion of GAO/PAB counseling, GAO shall present the agency an itemized statement of the total hours expended by the Counselor including any costs incurred by GAO relating to the counseling component of this matter.  Payment shall be made no later than 30 calendar days from the billing.

2.    Upon the completion of GAO/PAB investigation, GAO shall present the agency an itemized statement of the total hours expended by GAO/PAB including any costs incurred by GAO in the investigation component of this matter.   Payment shall be made no later than 30 calendar days from this billing.

3    Upon the issuance by the PAB Administrative Judge of a recommended decision in this matter, GAO shall present to the agency an itemized statement of the total hours expended by the assigned Administrative Judge for services related to the case determination, hearings and PAB decision.  The statement shall also include a recitation of the total dollar amount to be reimbursed to the GAO by the agency, which may include costs incurred by the GAO relating to the adjudication of this matter.  Payment shall be made no later than **thirty calendar days** of the billing.

4    In the event that the complaint is settled, withdrawn by the complainant or cancelled by the agency prior to the Administrative Judge's issuance of a recommended decision or a hearing, the agency shall, upon the GAO presentation to the agency of a statement of costs noted above, reimburse the GAO for all hours expended by the assigned Administrative Judge up to such time as the complaint is settled, withdrawn or cancelled.  The agency will also be required to reimburse the GAO for all hours expended by the assigned Administrative Judge in reviewing any proposed settlement to determine that it is fair, adequate and reasonable to the complainant.


_Jeannette M. Leoel_____ _8/8/05_
Signature                        Date

OFFICE OF THE CHIEF FINANCIAL OFFICER
LIBRARY OF CONGRESS


_Gilbert M. Sewdale_____ _8/4/05_
Signature                        Date

DIRECTOR, OFFICE OF WORKFORCE DIVERSITY
LIBRARY OF CONGRESS


_____
Signature                        Date

FOR THE GOVERNMENT ACCOUNTABILITY OFFICE

4

Signature _____    Date    8 - 8 - 05

FOR THE GOVERNMENT ACCOUNTABILITY
OFFICE PERSONNEL APPEALS BOARD

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DIANE R. WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| **DAVID M. WALKER** | : | **Civil Action No.: JDB-07-1452** |
| **Comptroller General of the United States** | : | |
| **Government Accountability Office** | : | |
| | : | |
| **Defendant.** | | |

...oOo...

### DECLARATION OF ANNE M. WAGNER

I, Anne M. Wagner, declare as follows:

1. I am General Counsel of the Personnel Appeals Board Office of General Counsel (PAB/OGC). I have served in that capacity since April 2006. Between December 1999 and June 2005, I was a member and Chair of the PAB.

2. When I learned on June 23, 2006 that the Library was concerned about various important aspects of the *Blumner v. LOC* investigation, I became concerned about Ms. Williams' ability to complete the *Blumner* investigation by July 7, 2006, as it was already June 23, 2006 and no interviews had taken place.

3. In early June 2006, I learned of rumors that the Chair of the PAB, Michael Doheny, had an association with GRA, Inc., a private company that performed work for GAO.

4. The allegation that Mr. Doheny, as an adjudicator, had a business relationship with a GAO contractor could have created the appearance of a conflict of interest that would be damaging to the Board's reputation and to the "Band II" restructuring cases at issue. Specifically, GRA, Inc. was a GAO contractor in the "Band II" restructuring – a restructuring that was at the heart of a significant number of investigations that PAB/OGC was investigating and possibly prosecuting at the time. To have the adjudicator for the Band II restructuring cases be someone who had a business relationship with a contractor in the Band II restructuring plainly could have jeopardized the integrity of the adjudicatory process.

5. I immediately tried to gather as much information as I could concerning the rumors so that I could assess their source and veracity and mitigate the potentially damaging impact of the allegation.

6. On June 6, 2006, I emailed Ms. Williams asking her to relay what she knew about the relationship between Mr. Doheny and GRA, Inc. Ms. Williams did not respond.

7. On June 16, 2006, I counseled Plaintiff concerning her failure to provide the information as requested, and the harm that such failure could cause the Board's adjudicative process. Ms. Williams continued to refuse to provide the requested information, stating that she (Ms. Williams) would get back to me, though she never did provide me with the requested information.

8.  As a consequence of Ms. Williams' refusal to provide the requested information, I felt it necessary to notify all employees with matters pending before the PAB, about the allegation concerning Mr. Doheny's relationship with GRA, Inc., and the steps that had been taken in response.

9.  On July 25, 2006, I again directed Ms. Williams to provide me with all information as to any communication she had had with GAO employees concerning Mr. Doheny and GRA, Inc., by close of business on July 26, 2006.   Ms. Williams did not provide the requested information by the designated deadline.

I have reviewed the information set forth in this Affidavit and, to the best of my information and belief, based upon information available to me in my official capacity, the answers are correct. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury

that the foregoing is true and correct.

_Anne M. Wagner_ _____ Anne M. Wagner
General Counsel
Personnel Appeals Board
Office of the General Counsel

# MEMO TO THE FILE

## June 23, 2006

This afternoon I called Ricardo Grijalva, Acting Chief of the LoC's Office of Workforce Diversity to follow-up on his conversation with Pat King regarding the fact that the Library had not yet received a report of investigation nor had any of the Library's managers been interviewed.

Ricardo said that Gilbert Sandate, the now retired Chief of OWD, had agreed to do a statement over the phone; that the Library had furnished all the documents requested; that the interrogatories that the Library had received from our investigator didn't involve the appropriate Title VII issues; that they would not meet sufficiency requirements for a Title VII investigation; and that the complainant is always interviewed at the beginning of an investigation and then management.  He also said that LoC follows a strict 6 month/180 day completion of investigation requirement.

6-26-06

*left in printer over weekend, so signed on 26th*

GAO FORM - 378 (Aug. 72)

United States
General Accounting Office
Operations Manual



# Order



2713.2

December 2, 1997

**Subject:**  DISCRIMINATION  COMPLAINT  PROCESS

## TABLE OF CONTENTS

Chapter                                                                                    Page

**CHAPTER 1.  DISCRIMINATION  COMPLAINT  GUIDELINES**
    1.  Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
    2.  Applicability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
    3.  Supersession  and Cancellation . . . . . . . . . . . . . . . . . . . . . . . . . .    1
    4.  References  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
    5.  General Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
    6.  GAO' s Equal Opportunity  Program  . . . . . . . . . . . . . . . . . . . . . . . .    2
    7.  Complaints of Discrimination  Covered by This Order . . . . . . . . . . . . . . . . .    3

**CHAPTER 2.  MEDIATION  PROGRAM**
    1.  The Mediation Program  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5
    2.  Mediation of Discrimination Complaint s . . . . . . . . . . . . . . . . . . . . . .    5
    3.  Confidentiality  of Mediation Process  . . . . . . . . . . . . . . . . . . . . . . .    6

**CHAPTER 3.  INDIVIDUAL  COMPLAINTS**
    1.  Precomplaint Processin g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7
    2.  Special Rules for Adverse and Performance- Based Actions  . . . . . . .    8
    3.  Complaints Against CRO Staff . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
    4.  Filing Individual Complaints  . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
    5.  Dismissals of Complaints  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
    6.  Investigation  of Complaint s . . . . . . . . . . . . . . . . . . . . . . . . . . .    10
    7.  Conciliation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    8.  GAO' s Final Decision  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    9.  Age Discrimination  in Employment Act . . . . . . . . . . . . . . . . . . . . . . .    12
    10.  Equal Pay Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

**CHAPTER 4.  CLASS COMPLAINTS**
    1.  Definition s . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13
    2.  Precomplaint Processing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13
    3.  Filing and Presentation  of a Class Complaint . . . . . . . . . . . . . . . . . . .    13
    4.  Acceptance or Dismissal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14
    5.  Notification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15
    6.  Obtaining Evidence Concerning  the  Complaint . . . . . . . . . . . . . . . . . .    15

---

**Distribution:**  C, N, R, S,
    and Employee Councils                              **Initiated by:** Civil Rights Office

December 2, 1997                                                                 (2713.2)

(1)  The complainant, the involved unit officials, and any other employee of GAO shall produce such documentary and testimonial evidence as the investigator deems necessary.

(2)  Investigators are authorized to administer oaths.  Statements of witnesses shall be made either under oath, affirmation, or written statement under penalty of perjury.

(3)  When the complainant or the unit against which a complaint is filed fails without good cause to respond fully and in a timely fashion to requests for documents, records, comparative data, statistics, affidavits, or the testimony of witness(es), the investigator may recommend in the investigative record that the Comptroller General or designee do the following:

(a)  draw an adverse inference that the requested information would have reflected unfavorably on the party refusing to provide the requested information,

(b)  consider the matters to which the requested information pertains to be established in favor of the opposing party,

(c)  issue a decision fully or partially in favor of the opposing party, and/or

(d)  take other appropriate actions.

c.  CRO shall endeavor to complete its investigation within 180 days of the filing date of an individual complaint.

d.  CRO shall notify the complainant when the investigation has been completed; shall provide the complainant with a copy of the investigative file; and shall notify the complainant that within 30 days of receipt of the investigative file, the complainant has the right to note any deficiencies in the file.  CRO shall supplement the investigation as necessary.

7.  **CONCILIATION**.  CRO shall review the investigative file and, if deemed appropriate, may initiate conciliation attempts with the complainant after the complainant receives the investigative file.

8.  **GAO'S FINAL DECISION**.

a.  Not later than 90 days after the complainant receives a copy of the investigative file, the Comptroller General or designee shall issue a final decision containing:

(1)  a notice of final agency action with a finding of no discrimination or a finding of discrimination; and

(2)  the complainant's rights, including applicable time requirements, to file a lawsuit in a U.S. district court or to file a charge with the General Counsel of the PAB, as set out in chapter 6 of this order.

b.  If conciliation is attempted under paragraph 7 of this chapter, CRO may extend the time frame for issuing a final decision under paragraph 8(a) above for up to 60 days.

11

June 23, 2006


To:    Anne

From:   Beth


On June 21 Pat called Ricardo Grijalva, Acting Chief of the LoC Office of Workforce
Diversity to discuss the status of a Library case that is going to be sent to the PAB for
counseling and investigation.  During the conversation, Mr. Grijalva inquired about the
*Blumner* investigation which had been assigned to Diane for investigation (Janice Reece
had done the counseling).  He told Pat that while the Library had received invoices for
work performed, that in the six months the matter had been with the PAB/OGC there
had been no meetings with LoC representatives nor had the Library received a report of
investigation.  Pat told Mr. Grijalva that she would check on *Blumner's* status and he
would be given an update.

When Pat relayed her conversation to me, I was taken aback.  I immediately checked
the PAB/OGC May status report and it would appear that Mr. Grijalva is correct that no
requests for management interviews, let alone interviews themselves, have occurred.  I
also reviewed Diane's time sheet for the first quarter (something that we use in
compiling data for the invoices GAO sends quarterly to LoC) for the *Blumner*
investigation (attached).  Since one can not be sure from the sheet, I also checked the
latest PAB/OGC monthly report.  Again it would appear that no attempt has been made
to interview any LoC managers.  I called Mr. Grijalva this afternoon.  He told me what
he had told Pat: no one had contacted him to set up management interviews.

The time sheet covers January through March of this year.  During that nearly ninety
day period, Diane worked on the *Blumner* investigation for a total of 10.25 hours which
would have been reflected in the invoice the Library received.  In addition, from the
May PAB/OGC status report it is clear that very little work has gone into the
investigation between the end of March and the end of May.

As a failure to hire case, *Blumner* is relatively simple compared to a failure to promote
or an adverse action and certainly should have easily been investigated within ninety

days. *Blumner* is now nearly six months old, but the investigation does not reflect even one month's worth of work, let alone six.

This is an embarrassing situation in which the Board has been placed.  Not only is the Library questioning the work being done (*e.g.,* Mr. Grijalva felt that interrogatories he received were not sufficient in that they did not go to the Title VII charges that were raised), but he was perplexed by the lack of interviews and concerned that the investigation would not be completed within 180 days/six months (July 5); and he noted that PAB/OGC has received all the documents that had been requested.  Please take the necessary steps to ensure that this investigation is given the highest priority and completed if at all possible no later than July 5.  If you conclude that a bit more time is required, please let me know what remains to be completed after July 5 and the date I can tell Mr. Grijalva to expect the report.

I am sorry to have to add this to all the other matters that you are undertaking with such hard work, dedication, and good cheer.  But, as I know you understand, this is an important matter that needs attention.  If there is anything that I can do to help, please let me know.

attachment

**From:**      Anne Wagner
**To:**        Don, Beth L
**Date:**      6/5/2006 10:48:54 AM
**Subject:**   Mike Doheny

Hi Beth,

Gail and I received this email today.   I told Gail to hold back from responding until we had a chance to talk
to you.  My thought is for Gail to respond with full disclosure and explanation.  If, down the road, we need
to take a more formal approach, then we can talk about what that might be.

Anne

Case 1:07-cv-01452-JDB    Document 4-12    Filed 02/11/2008    Page 2 of 9

**From:**    Jonathan R Tumin
**To:**      Gerebenics, Gail;  Wagner, Anne
**Date:**    6/5/2006 9:52:02 AM
**Subject:**  Another amazing fact

Fyi, in doing some research over the weekend, I saw that the Chief PAB judge, Michael W. Doheny, is also listed as a partner (ie, employee) of GRA, the firm that is doing the pay comparability study of APPS staff. GRA, of course, is a self-announced partner of Watson-Wyatt. It's not clear to me how Mr. Doheny can be both a PAB judge, and an employee of a firm currently under contract to GAO. Isn't this a classic conflict of interest? It's also interesting that Mr. Doheny's biography on the GRA website says not a word about his PAB role, while the biography of Joan Dodaro goes on endlessly about her (former) GAO roles. Perhaps the difference is a blatant conflict of interest.
thanks,
Jonathan


**CC:**      Donahue, Patricia F

Case 1:07-cv-01452-JDB    Document 4-12    Filed 02/11/2008    Page 3 of 9

**From:**      Anne Wagner
**To:**        Williams, Diane R
**Date:**      6/5/2006 11:17:30 AM
**Subject:**   Staff Meeting

Hi Diane,

Darian is available at 1:00 pm today, so we'll go ahead with the staff meeting.  Thanks.

Anne

**From:**      Anne Wagner
**To:**        Williams, Diane R
**Date:**      6/6/2006 10:25:10 AM
**Subject:**   Mike Doheny

Diane,

Were you aware that Mike Doheny was identified as a GRA associate?  If so, when and how did you hear about it?

Anne

Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836

**From:**       Anne Wagner
**To:**         Williams, Diane R
**Date:**       6/8/2006 7:29:35 PM
**Subject:**    Previous Request

Diane,

Please respond by cob Friday, June 9th to my request of June 6, 2006 regarding your knowledge of Mike Doheny's affiliation of GRA.

Anne

Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836

Case 1:07-cv-01452-JDB     Document 4-12     Filed 02/11/2008     Page 6 of 9

**From:**      Anne Wagner
**To:**          Williams, Diane R
**Date:**       6/8/2006 7:33:41 PM
**Subject:**   p.s.

Diane,

I won't be in the Office on Friday or Monday morning, but will be checking email and voicemail, so please respond by either leaving me an email, voice message or memo on my desk.

In my absence, Beth will certify T & A.

Thanks,

Anne


Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836

**From:**     Diane R Williams
**To:**       Wagner, Anne
**Date:**     7/27/2006 8:26:17 AM
**Subject:**  Re: Follow Up: Mike Doheny and GRA

I just saw your e-mail below. As you know, I've been trying to arrange the continuation of the interview with the HR Specialist who was involved in Ms. Blumner's case, and to obtain the pre-June 2005 merit selection plan the Library used at the time of the events at issue in that case. I was in the office at the time of your e-mail, so I'm not sure why you chose that method of communication. The tone of your e-mail is quite strident and unnecessary. In any event, I drafted my reply last night. I'll put the one credit hour you allotted me on my next time sheet. Since you have repeatedly said you were giving me direction on how to conduct the investigation in Ms. Blumner's case, and since I have repeatedly stated what I need to do to complete this investigation, I assumed that you knew what I was doing and how I was doing it. This is particularly true, given the constant e-mails, etc. regarding the Blumner case investigation. In addition, EEOC's regulations state that the testimony of witnesses that is to become part of the complaint file should be made under oath or affirmation or penalty of perjury. I assumed you were aware of this regulatory requirement, since you have been directing my investigation of Ms. Blumner's case. As a very experienced EEO investigator, Mr. Flowers was aware of this requirement, and he wanted to make sure that I was aware of it, too, so that the investigation will meet the EEOC requirements as nearly as possible. This is particularly important where, as here, I did not have the required eight-hour refresher training for EEO investigators, which is also pursuant to the EEOC's Federal sector EEO complaint processing regulations. Such training, as I previously mentioned to you, is to be taken prior to the commencement of the investigation. That did not happen in this case. I hope I have clarified this matter for you.

>>> Anne Wagner 07/26/06 3:19 PM >>>
Diane:

(1)  You did not previously inform me that you were taking sworn statements from the individuals whom you interviewed in conjunction with the Library investigation.  Your decision to employ this investigatory method and the manner in which you are carrying it out,  given the additional time involved, reflects your ongoing resistance to my clear and consistent instruction to complete that report as expeditiously as possible.  However, it appears that you have already lead Mr. Flowers, and likely other interviewees, to expect such statements.  If so, send the statements.  However, I want you to use the most expeditious means of delivery, either by hand or fax, to shorten the exchange time.

(2)  Your July 19 email to me simply stated that your typed notes from Mr. Flowers' interview were in the file room drawer.  There was no indication, nor reason for me to believe, that you were awaiting my review and action. Darian has the envelope with Flowers' statement that you left in the drawer.  From now on, any document that requires my review, signature or other action must be put in my inbox on the table inside the entrance to my office with a note or other clear indication attached as  to action requested.

(3)  Given my upcoming vacation, I need to respond to the Mike Doheny matter by Friday.  I find it surprising that you need to review your notes to refresh your memory as to information that was the subject of a recent counseling session.  Nevertheless, I will give you one hour of credit time today to give you an opportunity to review any notes and get the requested information to me by 5:30 today.


Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836

>>> Diane R Williams 7/26/2006 12:03 PM >>>
Mr. Flowers, who is an EEO Officer at the Library and who has conducted EEO investigations for the

Library specifically asked that he be given a copy of his statement to review. Are you saying that he can't have a copy of his statement to review?

>>> Anne Wagner 07/26/06 10:40 AM >>>
Diane:

Your interviews were not intended to result in sworn statements by the interviewees. Therefore, submitting your notes for their review, revision, and signature is unnecessary and will only further delay completion of your report.


Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836

>>> Diane R Williams 7/26/2006 10:33 AM >>>
I just finished typing my notes re: my interview with Mr. Ayers in the Blumner case. He's the head of Workforce Acquisitions at the Library of Congress. Do you want to review my typed notes before they're forwarded to Mr. Ayers for his review, revisions, and signature? That has to be done before we can forward Mr. Ayers' statement to Ms. Blumner for any follow-up questions she might have for him. Please let me know ASAP.

With regard to the Doheny-GRA matter, I opened and read your e-mail below this morning. I don't have my notes regarding that, and would like to respond tomorrow so that I can be as accurate as possible. In addition, I really don't want to take up work time for that. I still have several more tasks to do in the Blumner case. For example, I have to type my notes re: my initial interview with Ms. Pace, a member of Mr. Ayers' staff who was the HR Specialist involved in filling the job for which Ms. Blumner applied; try again to schedule the follow-up interview with Ms. Pace, since the initial interview was cut short, as I indicated in my detailed memo to you on Monday; and ascertain whether Ms. Blumner has any follow-up questions regarding the statements of Messrs. Sandate and/or Grijalva.

What happened to my typed notes re: my interview with Mr. Flowers, the Library's EEO Officer? Were the notes forwarded to him for his review, revisions, and signature? If so, please advise me of when the notes were sent to him so I can follow up. Thank you.

>>> Anne Wagner 07/25/06 1:50 PM >>>
Diane:

In an email dated June 6, 2006, I asked you to inform me as to whether you were aware that Board Chairperson Michael Doheny was identified as a GRA associate and if so, when and how you heard about it. You failed to respond to my inquiry. On June 8, 2006, I directed you to respond by close of business June 9 to my request of June 6. On June 9, you left a note on my desk asking me why I wanted to know this information. You did not provide the requested information.

On June 16, 2006, I counseled you regarding your refusal to comply with my request for information. I told you that I believed that you had had knowledge about Mr. Doheny's association and that I was disturbed by your failure to convey that information to me upon becoming aware of it. I explained that a putative conflict of interest on the part of the Board's Chairperson could foreseeably cause parties with charges under investigation by this Office and before the Personnel Appeals Board to question the integrity of the process. Failure to disclose this information in a timely way could have compromised the Board's adjudication of charges that the PAB/OGC had invested time and significant resources investigating.

During the meeting on June 16, I directed you to tell my how you came to know about Mr. Doheny's association with GRA, and particularly, from whom you received this information. I explained that my

105

reason for doing so was to determine the extent to which that information had been disseminated and the appropriate course of action to mitigate its potentially damaging impact. You refused to disclose this information at that time and left my office saying that you would get back to me. You did not do so, and failed to provide any information concerning how and from whom you became aware of Mr. Doheny's association with GRA.

Without knowing the actual scope of the potential misinformation, I subsequently decided to notify all GAO employees with a pending charge before the PAB as to the status of Mike Doheny's association with GRA and included documentation of his termination of that affiliation. I further invited them to call me with any questions or concerns.

Despite my early effort to avert undue speculation arising from this incident, Jesse Hoskins, GAO's Chief Human Capital Officer, received a call yesterday from a GAO employee inquiring about Mike Doheny's relationship with GRA and consequently made an inquiry to the Board.

Therefore, I am reiterating my previous instruction that you provide me with all information concerning any communication that you have had with GAO employee(s) regarding Mike Doheny and GRA. I need your response by cob tomorrow, July 26, 2006.


Anne M. Wagner
General Counsel
GAO Personnel Appeals Board
(202) 512-3836

106

**United States Government Accountability Office**

## GUIDE FOR DISCIPLINARY OFFENSES AND PENALTIES

**Order**

GAO Order 2751.1

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| **1. Attendance:**[1] | | | |
| a. Unauthorized absence on scheduled day of work[2]. | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 14-day Suspension to Removal |
| b. Recurring or unwarranted tardiness.[3] | Reprimand | Reprimand to 5-day Suspension | 5-day Suspension to Removal |
| c. Violation of properly imposed leave restrictions. | 3-day Suspension | 5- to 14-day Suspension | 14-day Suspension to Removal |
| d. Improper use of sick leave for any reason other than incapacitation, medical care, or other reasons permitted under GAO Order 2630.1). | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 10-day Suspension to Removal |
| **2. Fiscal Irregularities:** | | | |
| a. Unauthorized and/or improper use of government funds or of other funds which come into an employee's possession by reason of employment. | 14-day Suspension to Removal | Removal | |
| b. Submission of, abusing or allowing the submission of falsely stated travel, payroll, loan or purchase vouchers or their supporting documents (e.g., application for leave). | Reprimand to Removal | Removal | |
| c. Failure to properly account for or make proper distribution of any money, property or other thing of value received by or coming into employee's custody as a result of employment. | Reprimand to Removal | Removal | |
| d. Making or authorizing obligation or expenditure of funds against any allotment if in excess of amount available (violation of Anti-Deficiency Act). | Reprimand to 5-day Suspension | Reprimand to 14-day Suspension | 14-day Suspension to Removal |
| **3. Conduct Prejudicial to the Best Interests of the Government:** | | | |
| a. Conduct which causes the | 14-day Suspension to | Removal | |

DISCIPLINE

September 26, 2005

---

**Distribution:**   GAO Intranet

**Initiated by:**   **Human Capital**

2751.1                                                    September 26, 2005

## TABLE OF CONTENTS

| Chapter | Paragraph | Title | Page |
|---|---|---|---|
| **CHAPTER 1.** | | **PURPOSE AND GENERAL INFORMATION** | |
| | 1. | Purpose | 1 |
| | 2. | Supersession | 1 |
| | 3. | References | 1 |
| | 4. | Definitions | 1 |
| | 5. | Advice and Assistance From the Human Capital Office | 2 |
| | 6. | Timing of Disciplinary Actions | 2 |
| | 7. | Looking into Alleged Acts of Misconduct | 2 |
| | 8. | Disciplinary Action Based on Off-Duty Misconduct | 3 |
| | 9. | Documentation | 3 |
| | 10. | Prohibition on Coerced Resignations or Retirements | 3 |
| | 11. | Grievances and Appeals | 4 |
| | 12. | Actions Covered by Other Orders | 4 |
| **CHAPTER 2.** | | **CHOOSING AMONG DISCIPLINARY ACTIONS** | |
| | 1. | Factors to be Considered in Determining an Appropriate Penalty | 5 |
| | 2. | Letters of Reprimand | 6 |
| | 3. | Suspensions From Duty and Pay | 6 |
| | 4. | Reductions in Grade, Band, or Pay | 6 |
| | 5. | Removals | 7 |
| **APPENDIX 1.** | | **GUIDE FOR DISCIPLINARY OFFENSES AND PENALTIES** | 8 |

i

2025127525

2751.1                                                    September 26, 2005

## CHAPTER 1. PURPOSE AND GENERAL INFORMATION

1. **PURPOSE.** This order establishes the policies for initiating and taking disciplinary actions in the U.S. Government Accountability Office (GAO) and provides general management guidelines for taking disciplinary actions.

2. **SUPERSESSION.** This order supersedes GAO Order 2751.1, Discipline, dated May 21, 2001. Changes have been made throughout this order to update organizational codes and title changes.

3. **REFERENCES.**

   a. 31 USC 732.

   b. 4 C.F.R., Subchapter A, Part 2.

   c. GAO Order 2752.1, "Adverse Actions."

   d. GAO Order 2315.1, "Status, Tenure, and Trial Periods."

   e. GAO Order 2432.1, "Dealing With Unacceptable Performance."

   f. GAO Order 2531.3, "Within-Grade Salary Increases."

   g. GAO Order 2713.2, "Discrimination Complaint Process."

   h. GAO Order 2731.1, "Suitability."

   i. GAO Order 2752.2, "Removals and Suspensions in the Interests of National Security."

   j. GAO Order 2771.1, "Administrative Grievance Procedure."

4. **DEFINITIONS.** For purposes of this order, the following definitions apply:

   a. Admonishment: A warning to an employee by a supervisor concerning the employee's behavior. It may be oral or written. It is an informal disciplinary action and as such is not reflected in the employee's official personnel folder. It may also be called a warning or caution.

   b. Adverse Action: The personnel action of removal, reduction in grade, band, or pay, or suspension against an employee for such cause as will promote the efficiency of the government.

   c. Day: A calendar day.

   d. Demotion: Involuntary reduction in pay level of a GAO Senior Executive Service or GAO Senior Level employee, involuntary reduction in band of an employee who is under GAO's broadbanded performance based compensation system to a position in a lower band, or involuntary reduction in grade of a General Schedule (GS)- equivalent or Wage Grade employee to a position at a lower grade level.

   e. Reduction in Pay: The involuntary reduction in the rate of basic pay of an employee.

   f. Removal: Involuntary separation of an employee based on misconduct.

---

**Distribution:    GAO Intranet**                    **Initiated by:    Human Capital**

2751.1                                                              September 26, 2005

   g. <u>Reprimand</u>:  A written disciplinary action against an employee that is more severe than an
      admonishment.  A reprimand is placed in the employee's official personnel folder for a period of at
      least 1 year but not more than 3 years.

   h. <u>Resignation</u>:  A separation, other than retirement, at an employee's request.  It is a voluntary
      expression of the employee's desire to leave the organization that is normally made in writing.

   i. <u>Suspension</u>:  The placement of an employee, for disciplinary reasons, in a temporary status without
      duties and pay.

**5.  ADVICE AND ASSISTANCE FROM THE HUMAN CAPITAL OFFICE.**

   a. Managers, supervisors, and human capital consultants are encouraged to seek advice and assistance
      regarding possible disciplinary actions, including procedures to be followed, from the Human
      Capital Office. The Human Capital Office provides guidance, consultation, and assistance to
      management on employee relations matters, including grievances and appeals, adverse actions,
      employee discipline, and related matters.

   b. Managers, supervisors, and human capital consultants may also seek advice and assistance regarding
      possible disciplinary actions from GAO Counseling Services with respect to impact of
      organizational and interpersonal factors on resulting employee conduct and possible alternatives to
      formal disciplinary action.

   c. Certain documents require review and clearance by the Human Capital Office prior to issuance.  For
      details, see GAO Order 2432.1, "Dealing with Unacceptable Performance;" GAO Order 2531.3,
      "Within-Grade Salary Increases;" and GAO Order 2752.1, "Adverse Actions," for details.

**6.  TIMING OF DISCIPLINARY ACTIONS.**  Because circumstances vary with each case, no specific
deadlines can be established.  It is important that all disciplinary actions be taken in a timely manner,
that is, as close as possible to the event or management's awareness of it.

**7.  LOOKING INTO ALLEGED ACTS OF MISCONDUCT.**

   a. Before initiating disciplinary actions, supervisors and managers should gather sufficient information
      regarding the alleged acts of misconduct to persuade them that the employee in question committed
      the acts.  Supervisors and managers should talk with persons having information about the acts and
      can obtain written statements from them.

   b. Supervisors and managers should talk with any employee alleged to have engaged in misconduct
      before initiating disciplinary action.

   c. In some circumstances, particularly when violations of law may be involved, it is appropriate for
      management to refer matters to Security and Safety for investigation.

**8.  DISCIPLINARY ACTION BASED ON OFF-DUTY MISCONDUCT.**  Under some circumstances,
GAO can and should initiate disciplinary action for off-duty misconduct.  Action is appropriate when a
nexus (i.e., a link) exists between the misconduct and the efficiency of the service.  The misconduct
must, among other things, affect the employee's or his/her coworkers' job performance, or

2025127525

2751.1                                                                September 26, 2005

management's confidence in the employee's performance, or interfere with GAO's mission. The nature of the employee's duties may be critical to determining nexus. While previous cases should be considered in making a nexus determination, each case must be examined carefully as differences between cases can be subtle. The Human Capital Office should be contacted for assistance in making nexus determinations.

9. **DOCUMENTATION.** In order to support a disciplinary action, it is critically important that supervisors and managers maintain specific detailed documentation of the facts. Such documentation may take a variety of forms, such as supervisory notes of conversations and/or events; documents, such as telephone messages and official documents (such as performance appraisals and records of performance reviews, time and attendance reports, travel vouchers, or work products); records of previously imposed disciplinary action; and, where applicable, reports of findings resulting from investigations conducted by Security and Safety. Any documentation which contains confidential or privileged information must be maintained in secure areas to protect its confidentiality.

10. **PROHIBITION ON COERCED RESIGNATIONS OR RETIREMENTS.** Under no circumstances shall coercion be used for the purpose of securing resignation or retirement. Managers are urged to seek the advice of the Human Capital Office before engaging in a discussion of possible resignation or retirement with an employee in all circumstances but particularly when disciplinary action has been initiated against the employee.

    a. Retirement or Resignation of an Employee Not In Good Standing. Whenever a manager has made a decision to propose a removal; reduction in grade, band, or pay; or suspension, the manager may inform the employee that he/she can retire (if eligible) or resign in lieu of facing disciplinary action. In such cases, the employee must be advised that the decision whether to retire or resign is entirely the employee's. Although management will not stop or unduly delay the disciplinary action process, the employee must have sufficient time, in any event not less than 24 hours, to make a reasoned choice.

    b. Resignation of Employee With Appeal Rights. If an employee with appeal rights voluntarily resigns to avoid conduct action proceedings and management has already given the employee a written proposal or a decision to take an adverse action, a remark must be entered on the Standard Form 50 documenting the proposed action.

    c. Resignation of Employee Without Appeal Rights (Probationary Employees and Employees on Temporary Appointments). If an employee without appeal rights voluntarily resigns to avoid termination based on misconduct, the employee should be informed that the Standard Form 50, Notification of Personnel Action, recording the resignation, will not state the nature of his/her misconduct.

11. **GRIEVANCES AND APPEALS.**

    a. As a general rule, employees against whom disciplinary actions are taken have a right to protest the actions formally. The type of disciplinary action involved determines whether the recourse is a grievance under GAO Order 2771.1, "Administrative Grievance Procedure," or an appeal to the GAO Personnel Appeals Board. See GAO Order 2771.1 and PAB regulations, 4 C.F.R. Part 28, for further guidance. Employees are not entitled to grieve or appeal warnings of possible future disciplinary actions.

September 26, 2005

    b. Employees may file complaints under GAO Order 2713.2, "Discrimination Complaint Process," concerning any disciplinary action if they contend that the action is the result of discrimination on the basis of race, color, religion, sex, national origin, age, disability, sexual orientation, or retaliation for protected activities.

**12. ACTIONS COVERED BY OTHER ORDERS.** Procedures applicable to a variety of actions not covered by GAO Order 2751.1, both disciplinary and nondisciplinary in nature, are discussed in other GAO Orders. Information about these procedures may be found as follows:

| Information about-- | Is located in-- |
|---|---|
| Removals, demotions, or suspensions based on misconduct or a combination of misconduct and poor performance. | GAO Order 2752.1 |
| Removals or reductions in grade/band based solely on unacceptable performance. | GAO Order 2432.1 |
| Terminations during probationary period. | GAO Order 2315.1, ch. 7 |
| Denials of within grade salary increases. | GAO Order 2531.3 |
| Removals and suspensions taken in in the interests of national security. | GAO Order 2752.2 |
| Suitability disqualifications. | GAO Order 2731.1 |

2751.1                                                September 26, 2005

## CHAPTER 2. CHOOSING AMONG DISCIPLINARY ACTIONS

1. **FACTORS TO BE CONSIDERED IN DETERMINING AN APPROPRIATE PENALTY**.

    a. <u>Reasonableness of Action</u>. No disciplinary action shall be taken against an employee unless the allegations against the employee are supported by the preponderance of the evidence.

    b. <u>Factors to be Considered in Selecting Penalties</u>. In selecting a penalty to propose or deciding what penalty to impose for an offense, the manager or supervisor considers such factors as

        (1)   the nature and seriousness of the offense and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional, technical or inadvertent, was committed maliciously or for gain, or was frequently repeated;

        (2)   the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

        (3)   the employee's past disciplinary record;

        (4)   the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

        (5)   the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon the supervisor's confidence in the employee's ability to perform assigned duties;

        (6)   consistency of the penalty with those imposed upon other employees for the same or similar offenses;

        (7)   consistency of the penalty with GAO's guide for disciplinary offenses and penalties;

        (8)   the notoriety of the offense or its impact upon the reputation of GAO;

        (9)   the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

      (10)   potential for the employee's rehabilitation;

      (11)   mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others (including managers and supervisors) involved in the matter; and,

      (12)   the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

    c. <u>Nondiscrimination</u>. In no event shall GAO discriminate against an employee by taking disciplinary action on the basis of any of the following:

        (1)   race, color, religion, sex, national origin, age, or disability;

2025127525

2751.1                                                                September 26, 2005

    (2)   partisan political beliefs, affiliations, or activities;

    (3)   marital status; or

    (4)   sexual orientation.

  d.  <u>Retaliation and Reprisal</u>.  GAO shall not take disciplinary action against an employee

    (1)  in retaliation for the employee's having engaged in protected activity;

    (2)  in reprisal for the employee's exercise of any appeal right granted by any law, rule, or regulation; or

    (3)  in reprisal for the employee's engaging in whistleblowing as described in 5 USC 2302(b)(8).

**2.**  **LETTERS OF REPRIMAND.**  Letters of reprimand shall cite the specific acts for which the employee is reprimanded, and shall include a warning that repetition of the offense or other improper action may lead to a recommendation for more severe disciplinary action.  They shall inform the employee that the reprimand may be grieved through GAO's grievance procedure, that a copy of the letter will be filed in his/her official personnel folder for a period of at least 1 year but not more than 3 years, and that he/she can ask, after 1 year, that the letter be removed from the official personnel folder. In most cases, it is best if the warning about more severe disciplinary action is stated in general terms (e.g., "repetition . . . may lead to more severe disciplinary action, up to and including removal").

**3.**  **SUSPENSIONS FROM DUTY AND PAY.**  See GAO Order 2752.1, "Adverse Actions," for regulatory material regarding suspensions.

  a.  Suspension as a disciplinary action is effected when it is believed that the employee may be worthy of retention in the service, but action more severe than a letter of reprimand is required.  It is mandatory to impose a disciplinary suspension in certain situations prescribed by law.  For example, under the U.S. Code a suspension for at least 1 month must be imposed for willfully using or authorizing use of any government-owned or government-leased passenger vehicle for other than official purposes.  (The U.S. Code provision does not cover use of vehicles rented by employees for the purpose of carrying out official duties.)

  b.  A GAO employee may be indefinitely suspended pending an initial adjudication in the judicial process if he or she has been arrested and/or indicted, it is determined that there is reasonable cause to believe that a crime has been committed, and the alleged misconduct which led to the arrest or indictment bears a sufficient relationship to the employee's duties to warrant the action as promoting the efficiency of the service.  If the employee pleads guilty or is convicted, the agency may proceed with appropriate disciplinary action on the basis of the misconduct which led to the conviction without returning the employee to duty from the indefinite suspension.  Managers should consult with the Human Capital Office before implementing any indefinite suspension both as to the advisability of taking such action and the length of such suspension.

**4.**  **REDUCTIONS IN GRADE, BAND, OR PAY.**

  a.  Reduction in grade, band or pay as a disciplinary action may be effected when action more severe than a suspension is required, but it is believed that the employee may be worthy of retention in the

2025127525

2751.1                                                                September 26, 2005

service.  In appropriate circumstances, the reduction in grade or band may include placement in a different series and/or movement to a nonsupervisory position.  For example, an employee who is reduced in grade or band as discipline for an abuse of fiduciary responsibility may be placed in a different, but related, series where the employee's skills and experience will be valuable, but the fiduciary responsibility making the misconduct possible is not present.  Similarly, a supervisory employee who is reduced in grade as discipline for an abuse of supervisory authority may be placed in a nonsupervisory position.

    b.  For more information about reduction in grade, band, or pay solely for unacceptable performance, see GAO Order 2432.1, "Dealing with Unacceptable Performance."  For information about reduction in grade, band, or pay for misconduct or a combination of misconduct and poor performance, see GAO Order 2752.1, "Adverse Actions."

## 5.  <u>REMOVALS.</u>

    a.  A removal for misconduct is effected when other less severe disciplinary actions have been effected and have failed to correct the problem or when a single offense is so serious as to warrant removal.  Action to remove an employee is taken when the removal is for such cause as will promote the efficiency of the service.

    b.  For more information about offenses warranting removal, see Appendix 1. Guide for Disciplinary Offenses and Penalties. For information about reduction in grade, band, or pay solely for unacceptable performance, see GAO Order 2432.1, "Dealing with Unacceptable Performance."  For information about reductions in grade, band, or pay for misconduct or a combination of misconduct and poor performance, see GAO Order 2752.1, "Adverse Actions."

7

2751.1                                                      September 26, 2005

## APPENDIX 1. GUIDE FOR DISCIPLINARY OFFENSES AND PENALTIES

**What is the purpose of the Guide?**

The following "Guide for Disciplinary Offenses and Penalties" is not mandatory but is a guide to those managers responsible for disciplining employees. Decisions concerning the imposition of penalties are within the sole discretion of the responsible manager and should be made on a case-by-case basis taking into consideration all relevant facts, including those enumerated at ch. 2, par. 1b.

**When should disciplinary action be taken? What action?**

- In deciding what, if any, action to take in a given situation, the official with authority to take the action should look to the Guide for assistance. In addition, the official should contact the Human Capital Office.
- In many cases, it is appropriate to take informal action (i.e., supervisory counseling). No record of such actions is placed in the employee's official personnel folder. If the employee later commits other offenses, the prior action is useful as support for a higher level of disciplinary action.

**How should the Guide be used?**

- The Guide lists offenses by category. For each offense, it indicates a suggested range of penalties for the first offense, the second offense, and subsequent offenses.
- An offense can be a single occurrence of misconduct, or several connected occurrences that results in a single disciplinary action. For example, an employee on leave restriction who is absent without leave (AWOL) for three days (consecutive or not) has committed a single offense, not three offenses, unless disciplinary action was taken after the first or second day of AWOL. If disciplinary action (e.g., a reprimand) is taken against the employee as a result of the 3 days of AWOL and the employee subsequently is AWOL for another 3 days, those absences collectively constitute the second offense.

**What about penalties for offenses not listed in the Guide?**

The Guide does not include every potential cause for taking disciplinary action. If the official with authority to take disciplinary action believes that there is reason to take disciplinary action against an employee, but the offense is not listed in the Guide, the penalty for the most closely comparable offense(s) should be referenced. The official should contact the Human Capital Office before making a decision.

2751.1                                                    September 26, 2005

# GUIDE FOR DISCIPLINARY OFFENSES AND PENALTIES

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| **1. Attendance:[1]** | | | |
| a. Unauthorized absence on scheduled day of work[2]. | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 14-day Suspension to Removal |
| b. Recurring or unwarranted tardiness.[3] | Reprimand | Reprimand to 5-day Suspension | 5-day Suspension to Removal |
| c. Violation of properly imposed leave restrictions. | 3-day Suspension | 5- to 14-day Suspension | 14-day Suspension to Removal |
| d. Improper use of sick leave for any reason other than incapacitation, medical care, or other reasons permitted under GAO Order 2630.1). | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 10-day Suspension to Removal |
| **2. Fiscal Irregularities:** | | | |
| a. Unauthorized and/or improper use of government funds or of other funds which come into an employee's possession by reason of employment. | 14-day Suspension to Removal | Removal | |
| b. Submission of, abusing or allowing the submission of falsely stated travel, payroll, loan or purchase vouchers or their supporting documents (e.g., application for leave). | Reprimand to Removal | Removal | |
| c. Failure to properly account for or make proper distribution of any money, property or other thing of value received by or coming into employee's custody as a result of employment. | Reprimand to Removal | Removal | |
| d. Making or authorizing obligation or expenditure of funds against any allotment if in excess of amount available (violation of Anti-Deficiency Act). | Reprimand to 5-day Suspension | Reprimand to 14-day Suspension | 14-day Suspension to Removal |

2751.1                                                              September 26, 2005

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| **3. Conduct Prejudicial to the Best Interests of the Government:** | | | |
| a. Conduct which causes the employee to be convicted of a criminal charge which relates to the employee's position and the mission of the agency. | 14-day Suspension to Removal | Removal | |
| b. Actual or attempted theft. | 5-day Suspension to Removal | Removal | |
| c. Unauthorized removal of government-owned or leased property or property over which governmental custody is exercised.[4] | Reprimand to 14-day Suspension | 5-day Suspension to Removal | Removal |
| d. Concealing, removing, mutilating, altering, or destroying government records. | Reprimand to Removal | 7-day Suspension to Removal | Removal |
| e. Unauthorized use of, or authorizing the use of, government property, facilities or services for other than official purposes.[5] | Reprimand to Removal | 5-day Suspension to Removal | Removal |
| f. Conducting non-authorized personal business while in duty status. | Admonishment to 10-day Suspension | Reprimand to Removal | 5-day Suspension to Removal |
| g. Willful use, or authorizing use, of any government-owned or –leased passenger vehicle for other than official business. Carries mandatory penalty of 1-month suspension. See 31 USC 1349. | 1-month Suspension to Removal | Removal | |
| h. Unauthorized use of federal telecommunication system, commercial long distance facilities, or misuse of the Internet.[6] | Reprimand to 5-day Suspension | Reprimand to 14-day Suspension | Removal |

2751.1                                                                September 26, 2005

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| i. Unauthorized or improper use of government credit cards (e.g., cards issued to purchase office supplies, gift awards or for motor vehicle operators to buy gas). | Reprimand to Removal | 5-day Suspension to Removal | Removal |
| j. Use of contractor-issued charge cards for illegal purposes or repeated instances of personal use, or failure to pay, or to pay on time, bills on such cards. | Reprimand to 5-day Suspension | Reprimand to 14-day Suspension | 10-day Suspension to Removal |
| k. Loss of, deliberate damage to, or unauthorized destruction of government property, records, or information. | Reprimand to 10-day Suspension | 2-day Suspension to Removal | 5-day Suspension to Removal |
| l. Discourteous conduct to the public (see 4 CFR 7.5). | Admonishment to 1-day Suspension | Reprimand to 5-day Suspension | 1-day to 14-day Suspension |
| m. Fighting, inflicting or attempting to inflict bodily injury or otherwise creating a public disturbance while on duty or on government premises. | Admonishment to Removal | Reprimand to Removal | 5-day Suspension to Removal |
| n. Unprofessional conduct: conduct unbecoming a GAO employee.[2] | Reprimand to Removal | 5-day Suspension to Removal | Removal |
| o. Placement on a GAO computer of nonapproved hardware, software, special applications and/or peripherals. | Admonishment to 3-day Suspension | Reprimand to 14-day Suspension | 5-day Suspension to Removal |
| 4. Sexual Harassment:[8] | | | |
| a. Sexual harassment. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |
| b. Unprofessional conduct of a sexual nature. | Reprimand to 10-day Suspension | 5-day Suspension to Removal | Removal |
| c. Retaliation against an employee arising from or in connection with an allegation of sexual harassment. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |

11

2751.1                                                          September 26, 2005

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| **5. Insubordination:** | | | |
| a. Refusal/failure to comply with legitimate supervisory instructions. | Reprimand to 14-day Suspension | 14-day Suspension to Removal | Removal |
| b. Willful failure to complete Continuing Professional Education credits as required (see GAO Order 2410.2). | Reprimand to 14-day Suspension | 14-day Suspension to Removal | Removal |
| c. Failure to submit required background forms within prescribed timeframe or to attend scheduled security briefing. | Admonishment to Reprimand | Reprimand to 5-day Suspension | 5-day Suspension to Removal |
| **6. Negligent performance of duties:** | | | |
| a. Where waste or other cost is insubstantial. | Admonishment to Reprimand | Reprimand to 5-day Suspension | 5-day to 30-day Suspension |
| b. Where waste or other cost is substantial. | Reprimand to 5-day Suspension | 5-day Suspension to Removal | 30-day Suspension to Removal |
| **7. Deliberate misrepresentation, falsification, exaggeration, or concealment of material fact(s) in connection with any official document, employment document, time and attendance report, or matter(s) under official investigation.** | Reprimand to 30-day Suspension | 5-day Suspension to Removal | 14-day Suspension to Removal |
| **8. Sleeping on duty** | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 10-day Suspension to Removal |
| **9. Gambling on government premises or while in duty status.** | Reprimand to 5-day Suspension | Reprimand to 10-day Suspension | 10-day Suspension to Removal |
| **10. Soliciting or accepting gifts, loans, favors, etc., from GAO subordinates, or from persons, firms, or corporations with whom official relations exist, have existed, or may exist.[2]** | Reprimand to Removal | 14-day Suspension to Removal | Removal |

2751.1                                                      September 26, 2005

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| **11. Engaging in Outside Employment Without Securing Prior Written Approval:** | | | |
| a. Where no conflict of interest is involved. | Admonishment to Reprimand | Reprimand to 3-day Suspension | 5-day Suspension to Removal |
| b. Where conflict of interest is involved. | Reprimand to Removal | 30-day Suspension to Removal | Removal |
| **12. Violations of Financial Disclosure Requirements:** | | | |
| a. Willful failure to file financial disclosure reports or requested amendments. | 14-day Suspension to Removal | Removal | |
| b. Untimely filing of financial disclosure reports or requested amendment.[10] | Admonishment to Reprimand | Reprimand to 3-day Suspension | 5- to 14-day Suspension |
| c.   Falsifying financial disclosure reports or failing to report required information in such reports. | | | |
| 1) Where conflict of interest is involved. | 5-day Suspension to Removal | Removal | |
| 2) Where no conflict of interest is involved. | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 5-day Suspension to Removal |
| **13. Discrimination:[11]** | | | |
| a. Discrimination against an employee or applicant for employment because of race, color, sex, religion, national origin, age, disability, or sexual orientation. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |
| b. Retaliation against an employee for having engaged in a protected activity or in reprisal for the exercise of an appeal right granted by any law, rule or regulation or for engaging in whistleblowing. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |
| **14. Intoxicants and Illegal Drugs:** | | | |
| a. Using or being under the influence of intoxicants or drugs while on official duty or reporting for duty or being on duty under the influence of intoxicants or drugs. | 3- to 30-day Suspension | 14-day Suspension to Removal | Removal |

2751.1                                                          September 26, 2005

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| b. Operating a government-owned or leased vehicle while under the influence of intoxicants or drugs. | 5-day Suspension to Removal | Removal | |
| c. Selling or distributing of drugs on government-owned or leased premises. | 14-day Suspension to Removal | Removal | |
| **15. Safety and Health Violations:** | | | |
| Failure to observe safety and health regulations, instructions, and/or posted rules. | Admonishment to 30-day Suspension | Reprimand to removal | 5-day Suspension to Removal |
| **16. Security Violations:** | | | |
| a. Failure to safeguard classified material. | | | |
| 1) Where such does not result in actual compromise of the material. | Reprimand to 5-day Suspension | 5- to 30-day Suspension | 10-day Suspension to Removal |
| 2) Where such does result in compromise of the material. | 14-day Suspension to Removal | 30-day Suspension to Removal | Removal |
| b. Unauthorized release of draft or restricted GAO reports or other official information contrary to law and regulation. | Reprimand to 30-day Suspension | 30-day Suspension to Removal | Removal |

**Notes to Guide for Penalties:**

1. Absence must be carried on the time and attendance reports or webTA time and attendance system as absences without leave (AWOL).
2. Except where unauthorized absence is for 5 or more consecutive days, first offense does not occur until after employee has been counseled.
3. First offense does not occur until after employee has been counseled.
4. In addition, see 18 U.S.C. 641, 643 and 654 for possible criminal penalties.
5. See 18 U.S.C. 1719 for criminal penalties in cases of misuse of franking privileges.
6. See GAO Order 0645.1, Limited Personal Use of Government-Provided Office and IT Equipment, Including Internet.
7. "Unprofessional conduct: conduct unbecoming a GAO employee" should only be used to describe an offense if none of the more specific types of offenses contained in the Guide accurately describe the misconduct. In such cases, the discipline documents must describe in detail the nature of the misconduct.
8. Sexual harassment is defined in Title VII of the Civil Rights Act of 1964, as amended. Although in some circumstances certain behaviors of a sexual nature may not meet the Title VII definition, they may violate agency conduct standards. These behaviors constitute unprofessional conduct of a sexual nature. The list

2025127525

2751.1                                                                September 26, 2005

below provides a few examples of behaviors that would violate agency conduct standards, even though they may not meet the legal definition of sexual harassment:

- Unwelcome whistling, staring or leering at another person;
- Making pejorative comments or taking actions based upon another employee's sexual orientation;
- Unwelcome questions or comments about another person's sexual activities, dating, personal or intimate relationships or appearance;
- Unwelcome sexually suggestive or flirtatious gifts;
- Conduct or remarks that are sexually suggestive or that demean or show hostility to a person because of the person's gender;
- Displays or circulation of pictures, videos, objects or written materials that are sexually suggestive or explicit or that demean or show hostility to a person because of the person's gender;
- Unwelcome sexually suggestive, explicit or flirtatious letters, notes, e-mails or voicemails; and
- Meetings or entertainment of GAO personnel at an establishment with personnel attired sexually, suggestively or explicitly or providing entertainment of a sexually suggestive or explicit nature.

Regardless of whether or not an employee's actions violate Title VII or agency conduct standards, disciplinary action may be taken after unit management has determined that the misconduct has occurred. It does not require a formal sexual harassment complaint, or a decision by GAO, the GAO Personnel Appeals Board, or a federal court on a complaint.

9.   See chapter 3 of GAO Order 2735.1, Code of Ethics Including Employee Responsibilities and Conduct, for detailed information, including exceptions to basic prohibitions on solicitation and acceptance of gifts.

10.  In addition, late filers of Senate Public Financial Disclosure Report are subject to fines of $200.

11.  Disciplinary action may be taken after the appropriate GAO manager has determined that misconduct has occurred. It does not require a decision by GAO, the GAO Personnel Appeals Board, or a federal court on a formal discrimination or reprisal complaint.

2025127525    GAO CNN PAB    05-36-34 a.m.    02-07-2008

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| employee to be convicted of a criminal charge which relates to the employee's position and the mission of the agency. | Removal | | |
| b. Actual or attempted theft. | 5-day Suspension to Removal | Removal | |
| c. Unauthorized removal of government-owned or leased property or property over which governmental custody is exercised.[4] | Reprimand to 14-day Suspension | 5-day Suspension to Removal | Removal |
| d. Concealing, removing, mutilating, altering, or destroying government records. | Reprimand to Removal | 7-day Suspension to Removal | Removal |
| e. Unauthorized use of, or authorizing the use of, government property, facilities or services for other than official purposes.[5] | Reprimand to Removal | 5-day Suspension to Removal | Removal |
| f. Conducting non-authorized personal business while in duty status. | Admonishment to 10-day Suspension | Reprimand to Removal | 5-day Suspension to Removal |
| g. Willful use, or authorizing use, of any government-owned or –leased passenger vehicle for other than official business. Carries mandatory penalty of 1-month suspension. See 31 USC 1349. | 1-month Suspension to Removal | Removal | |
| h. Unauthorized use of federal telecommunication system, commercial long distance facilities, or misuse of the Internet.[6] | Reprimand to 5-day Suspension | Reprimand to 14-day Suspension | Removal |
| i. Unauthorized or improper use of government credit cards (e.g., cards issued to purchase office supplies, gift awards or for motor vehicle operators to | Reprimand to Removal | 5-day Suspension to Removal | Removal |

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| buy gas). | | | |
| j. Use of contractor-issued charge cards for illegal purposes or repeated instances of personal use, or failure to pay, or to pay on time, bills on such cards. | Reprimand to 5-day Suspension | Reprimand to 14-day Suspension | 10-day Suspension to Removal |
| k. Loss of, deliberate damage to, or unauthorized destruction of government property, records, or information. | Reprimand to 10-day Suspension | 2-day Suspension to Removal | 5-day Suspension to Removal |
| l. Discourteous conduct to the public (see 4 CFR 7.5). | Admonishment to 1-day Suspension | Reprimand to 5-day Suspension | 1-day to 14-day Suspension |
| m. Fighting, inflicting or attempting to inflict bodily injury or otherwise creating a public disturbance while on duty or on government premises. | Admonishment to Removal | Reprimand to Removal | 5-day Suspension to Removal |
| n. Unprofessional conduct: conduct unbecoming a GAO employee.[7] | Reprimand to Removal | 5-day Suspension to Removal | Removal |
| o. Placement on a GAO computer of nonapproved hardware, software, special applications and/or peripherals. | Admonishment to 3-day Suspension | Reprimand to 14-day Suspension | 5-day Suspension to Removal |
| **4. Sexual Harassment:**[8] | | | |
| a. Sexual harassment. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |
| b. Unprofessional conduct of a sexual nature. | Reprimand to 10-day Suspension | 5-day Suspension to Removal | Removal |
| c. Retaliation against an employee arising from or in connection with an allegation of sexual harassment. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |
| **5. Insubordination:** | | | |
| a. Refusal/failure to comply with legitimate supervisory instructions. | Reprimand to 14-day Suspension | 14-day Suspension to Removal | Removal |
| b. Willful failure to complete | Reprimand to 14-day | 14-day Suspension to | Removal |

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| Continuing Professional Education credits as required (see GAO Order 2410.2). | Suspension | Removal | |
| c. Failure to submit required background forms within prescribed timeframe or to attend scheduled security briefing. | Admonishment to Reprimand | Reprimand to 5-day Suspension | 5-day Suspension to Removal |
| **6. Negligent performance of duties:** | | | |
| a. Where waste or other cost is insubstantial. | Admonishment to Reprimand | Reprimand to 5-day Suspension | 5-day to 30-day Suspension |
| b. Where waste or other cost is substantial | Reprimand to 5-day Suspension | 5-day Suspension to Removal | 30-day Suspension to Removal |
| **7. Deliberate misrepresentation, falsification, exaggeration, or concealment of material fact(s) in connection with any official document, employment document, time and attendance report, or matter(s) under official investigation.** | Reprimand to 30-day Suspension | 5-day Suspension to Removal | 14-day Suspension to Removal |
| **8. Sleeping on duty** | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 10-day Suspension to Removal |
| **9. Gambling on government premises or while in duty status.** | Reprimand to 5-day Suspension | Reprimand to 10-day Suspension | 10-day Suspension to Removal |
| **10. Soliciting or accepting gifts, loans, favors, etc., from GAO subordinates, or from persons, firms, or corporations with whom official relations exist, have existed, or may exist.[2]** | Reprimand to Removal | 14-day Suspension to Removal | Removal |
| **11. Engaging in Outside Employment Without Securing Prior Written Approval:** | | | |
| a. Where no conflict of interest is involved. | Admonishment to Reprimand | Reprimand to 3-day Suspension | 5-day Suspension to Removal |
| b. Where conflict of interest is involved. | Reprimand to Removal | 30-day Suspension to Removal | Removal |
| **12. Violations of Financial Disclosure Requirements:** | | | |

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| a. Willful failure to file financial disclosure reports or requested amendments. | 14-day Suspension to Removal | Removal | |
| b. Untimely filing of financial disclosure reports or requested amendment.[10] | Admonishment to Reprimand | Reprimand to 3-day Suspension | 5- to 14-day Suspension |
| b.  Falsifying financial disclosure reports or failing to report required information in such reports. | | | |
| 1) Where conflict of interest is involved. | 5-day Suspension to Removal | Removal | |
| 2) Where no conflict of interest is involved. | Admonishment to 5-day Suspension | Reprimand to 14-day Suspension | 5-day Suspension to Removal |
| **13. Discrimination:[11]** | | | |
| a. Discrimination against an employee or applicant for employment because of race, color, sex, religion, national origin, age, disability, or sexual orientation. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |
| b. Retaliation against an employee for having engaged in a protected activity or in reprisal for the exercise of an appeal right granted by any law, rule or regulation or for engaging in whistleblowing. | 3-day Suspension to Removal | 14-day Suspension to Removal | Removal |
| **14. Intoxicants and Illegal Drugs:** | | | |
| a. Using or being under the influence of intoxicants or drugs while on official duty or reporting for duty or being on duty under the influence of intoxicants or drugs. | 3- to 30-day Suspension | 14-day Suspension to Removal | Removal |
| b. Operating a government-owned or leased vehicle while under the influence of intoxicants or drugs. | 5-day Suspension to Removal | Removal | |
| c. Selling or distributing of drugs on government-owned or leased premises. | 14-day Suspension to Removal | Removal | |
| **15. Safety and Health Violations:** | | | |

| TYPE OF OFFENSE | SUGGESTED PENALTY FOR 1ST OFFENSE | SUGGESTED PENALTY FOR 2ND OFFENSE | SUGGESTED PENALTY FOR SUBSEQUENT OFFENSES |
|---|---|---|---|
| Failure to observe safety and health regulations, instructions, and/or posted rules. | Admonishment to 30-day Suspension | Reprimand to removal | 5-day Suspension to Removal |
| **16. Security Violations:** | | | |
| a. Failure to safeguard classified material. | | | |
| 1) Where such does not result in actual compromise of the material. | Reprimand to 5-day Suspension | 5- to 30-day Suspension | 10-day Suspension to Removal |
| 2) Where such does result in compromise of the material. | 14-day Suspension to Removal | 30-day Suspension to Removal | Removal |
| b. Unauthorized release of draft or restricted GAO reports or other official information contrary to law and regulation. | Reprimand to 30-day Suspension | 30-day Suspension to Removal | Removal |

**Notes to Guide for Penalties:**

1. Absence must be carried on the time and attendance reports or webTA time and attendance system as absences without leave (AWOL).
2. Except where unauthorized absence is for 5 or more consecutive days, first offense does not occur until after employee has been counseled.
3. First offense does not occur until after employee has been counseled.
4. In addition, see 18 U.S.C. 641, 643 and 654 for possible criminal penalties.
5. See 18 U.S.C. 1719 for criminal penalties in cases of misuse of franking privileges.
6. See GAO Order 0645.1, Limited Personal Use of Government-Provided Office and IT Equipment, Including Internet.
7. "Unprofessional conduct: conduct unbecoming a GAO employee" should only be used to describe an offense if none of the more specific types of offenses contained in the Guide accurately describe the misconduct. In such cases, the discipline documents must describe in detail the nature of the misconduct.
8. Sexual harassment is defined in Title VII of the Civil Rights Act of 1964, as amended. Although in some circumstances certain behaviors of a sexual nature may not meet the Title VII definition, they may violate agency conduct standards. These behaviors constitute unprofessional conduct of a sexual nature. The list below provides a few examples of behaviors that would violate agency conduct standards, even though they may not meet the legal definition of sexual harassment:
   - Unwelcome whistling, staring or leering at another person;
   - Making pejorative comments or taking actions based upon another employee's sexual orientation;
   - Unwelcome questions or comments about another person's sexual activities, dating, personal or intimate relationships or appearance;
   - Unwelcome sexually suggestive or flirtatious gifts;
   - Conduct or remarks that are sexually suggestive or that demean or show hostility to a person because of the person's gender;
   - Displays or circulation of pictures, videos, objects or written materials that are sexually suggestive or explicit or that demean or show hostility to a person because of the person's gender;
   - Unwelcome sexually suggestive, explicit or flirtatious letters, notes, e-mails or voicemails; and
   - Meetings or entertainment of GAO personnel at an establishment with personnel attired sexually, suggestively or explicitly or providing entertainment of a sexually suggestive or explicit nature.

2025127525

Regardless of whether or not an employee's actions violate Title VII or agency conduct standards, disciplinary action may be taken after unit management has determined that the misconduct has occurred. It does not require a formal sexual harassment complaint, or a decision by GAO, the GAO Personnel Appeals Board, or a federal court on a complaint.

9.  See chapter 3 of GAO Order 2735.1, Code of Ethics Including Employee Responsibilities and Conduct, for detailed information, including exceptions to basic prohibitions on solicitation and acceptance of gifts.

10. In addition, late filers of Senate Public Financial Disclosure Report are subject to fines of $200.

11. Disciplinary action may be taken after the appropriate GAO manager has determined that misconduct has occurred. It does not require a decision by GAO, the GAO Personnel Appeals Board, or a federal court on a formal discrimination or reprisal complaint.

United States
General Accounting Office
Operations Manual



# Order

2752.1

ADVERSE ACTIONS

July 23, 2001

| Distribution: | GAO Intranet | | Initiated by: | Human Capital |
|---|---|---|---|---|

July 23, 2001                                                        2752.1

## TABLE OF CONTENTS

| Chapter | Paragraph | Title | Page |
|---|---|---|---|

**CHAPTER 1.    INTRODUCTION**

| | | | |
|---|---|---|---|
| | 1. | Purpose ........................................................... | 1 |
| | 2. | Supersession ................................................... | 1 |
| | 3. | References...................................................... | 1 |
| | 4. | Definitions ...................................................... | 2 |
| | 5. | Standards for Taking Adverse Actions........................ | 3 |
| | 6. | Alternative Discipline ........................................... | 3 |

**CHAPTER 2.    SUSPENSIONS FOR 14 DAYS OR LESS**

| | | | |
|---|---|---|---|
| | 1. | Type of Adverse Action Covered ........................... | 4 |
| | 2. | Employee Coverage............................................. | 4 |
| | 3. | Step 1 - Proposing a Suspension............................. | 5 |
| | 4. | Step 2 - Deciding the Proposed Suspension ................ | 6 |
| | 5. | Identification of Proposing and Deciding Officials............ | 7 |
| | | FIGURE 2.1.Identification of Proposing and Deciding Officials............................................. | 7 |
| | 6. | Employees' Appeal Rights....................................... | 7 |
| | 7. | Documentation of Suspensions ............................... | 8 |

**CHAPTER 3.    REMOVALS, SUSPENSIONS FOR MORE THAN 14 DAYS, REDUCTIONS IN GRADE OR BAND, REDUCTIONS IN PAY, AND FURLOUGHS FOR 30 DAYS OR LESS**

| | | | |
|---|---|---|---|
| | 1. | Types of Adverse Actions Covered........................... | 9 |
| | 2. | Types of Actions Not Covered ............................... | 9 |
| | 3. | Employee Coverage............................................. | 10 |
| | 4 | Step 1 - Proposing an Adverse Action....................... | 10 |
| | 5. | Step 2 - Deciding the Proposed Adverse Action ............ | 11 |
| | 6. | Identification of Proposing and Deciding Officials............ | 13 |
| | | FIGURE 3.1.Identification of Proposing and Deciding Officials................................................ | 13 |
| | 7. | Employees' Appeal Rights....................................... | 13 |
| | 8. | Documentation of Adverse Actions .......................... | 14 |

**APPENDIX 1.    FACTORS FOR DETERMINING APPROPRIATE PENALTIES** ................................................... 15

**United States**
**General Accounting Office**
**Operations Manual**



# Order

| 2752.1 |
|---|

July 23, 2001

Subject:   **ADVERSE ACTIONS**

---

### CHAPTER 1. INTRODUCTION

1.   **PURPOSE.**  This order contains the procedures for GAO officials to follow when taking adverse actions against employees and explains the rights of employees regarding adverse actions.

2.   **SUPERSESSION.**  This order supersedes Interim Order 2752.1, "Adverse Actions," dated April 3, 2001. Policy, procedures and references are updated throughout the order.

3.   **REFERENCES.**

   a.  5 U.S.C. Chapter 75.

   b.  5 C.F.R., Part 752.

   c.  Section 2.5, 4 C.F.R., "Prohibited Personnel Practices."

   d.  GAO Order 2211.1, "Veterans' Preference."

   e.  GAO Order 2213.1, "Noncompetitive Positions."

   f.  GAO Order 2307.1, "Veterans Readjustment Appointments."

   g.  GAO Order 2315.1, "Status, Tenure, and Trial Periods."

   h.  GAO Order 2316.1, "Competitive Time-Limited Employment."

   i.  GAO Order 2317.1, "GAO's Senior Executive Service."

   j.  GAO Order 2319.1, "GAO Senior Level Positions."

   k.  GAO Order 2339.1, "Medical Determinations."

   l.  GAO Order 2351.1, "Reduction in Force."

   m.  GAO Order 2432.1, "Dealing With Unacceptable Performance."

   n.  GAO Order 2536.1, "Grade, Band, and Pay Retention."

---

**Distribution:**   **GAO Intranet**                              **Initiated by:**   **Human Capital**

2752.1                                                                              July 23, 2001

    o.  GAO Order 2713.2, "Discrimination Complaint Process."

    p.  GAO Order 2751.1, "Discipline."

    q.  GAO Order 2752.2, "Suspensions and Removals Taken in the Interest of National Security."

    r.  GAO Notices 2771.1(A-92), (A-99), and (A-00), "Administrative Grievance Procedure."

## 4.  DEFINITIONS.

    a.  "Adverse action" means a suspension, a reduction in grade or band, a reduction in pay, a furlough of 30 days or less, or a removal.

    b.  "Band" is a level of classification under GAO's Pay-for-Performance system.

    c.  "Current continuous service" means civilian service in the same position or similar positions without a break of a workday.

    d.  "Day" means a calendar day.

    e.  "Furlough" means an employee is placed in a temporary non-duty, non-pay status for non-disciplinary reasons.

    f.  "Grade" is a rank of positions under the General Schedule of Federal Wage classification system.

    g.  "Indefinite suspension" means a suspension pending GAO investigation or further action.  The indefinite suspension is of unspecified length and ends when conditions set forth in a proposal notice have been met.

    h.  "Pay" means the basic pay rate set by the Comptroller General for a position before any deductions and additional compensation, such as overtime.

    i.  "Preference eligible" means a veteran or a relative of a veteran as defined in GAO Order 2211.1.

    j.  "Reduction in band" means the involuntary change of an employee in GAO's broad-banded Pay-For-Performance system to a lower pay band.

    k.  "Reduction in grade" means the involuntary change of a General Schedule or Federal Wage system employee to a lower grade.

    l.  "Reduction in pay" means the involuntary reduction of an employee's pay.

    m.  "Similar positions" mean positions in which the duties performed are similar in nature and character and require substantially the same or similar qualifications, such that the incumbent could be interchanged without significant training or undue work interruption.

    n.  "Suspension" means the temporary placing of an employee in a nonduty, nonpay status for disciplinary reasons.

2025127525

July 23, 2001                                                                    2752.1

o.  "Unit head" means, for headquarters-based staff, a managing director or an SES-level office head; for field-based staff assigned to a team, the unit head is the team managing director; and for field-based staff not assigned to a team, the unit head is the regional director.

5.  **STANDARDS FOR TAKING ADVERSE ACTIONS.**

a.  GAO may take an adverse action, including a performance-based adverse action, against an employee only "for such cause as will promote the efficiency of the service." (5 U.S.C. 7513)

b.  GAO may not take an adverse action against an employee if doing so would constitute a prohibited personnel practice. (4 C.F.R. 2.5)

6.  **ALTERNATIVE DISCIPLINE.**  With guidance from and the concurrence of the Human Capital Office (HC), a GAO official may take lesser disciplinary action, such as a letter of discipline in lieu of suspension or a paper suspension, in lieu of an adverse action as described in chapters 2 and 3.  Refer to GAO Order 2751.1, Discipline, and the "Guide for Disciplinary Offenses and Penalties."

2752.1                                                                                     July 23, 2001

## CHAPTER 2. SUSPENSIONS FOR 14 DAYS OR LESS

1. **TYPE OF ADVERSE ACTION COVERED.** This chapter covers all suspensions of 14 days or less, except suspensions taken for national security reasons. (See GAO Order 2752.2.)

2. **EMPLOYEE COVERAGE.**

   a.  Employees in administrative, professional, and support staff (APSS), **and** attorney positions are covered, except as follows:

      (1)  Employees who are required to complete a 1-year probationary period, but have not yet done so, are not covered by this chapter. (See GAO Order 2315.1)

      (2)  Employees whose appointments do not require a probationary period are not covered by this chapter until they have completed 1 year of current continuous service in the same position or similar positions.

   b.  Employees in GAO analyst positions are covered, except as follows:

      (1)  Employees who are required to complete a 2-year probationary period, but have not yet done so, are not covered by this chapter. (In some cases the probationary period for GAO analyst employees is 1 year.  See GAO Order 2315.1)

      (2)  Employees whose appointments do not require a probationary period are not covered by this chapter until they have completed 2 years of current continuous service in the same position or similar positions.

   c.  The following employees are **not** covered by this chapter:

      (1)  the Comptroller General and the Deputy Comptroller General;

      (2)  members of GAO's Senior Executive Service (see GAO Order 2317.1);

      (3)  employees in GAO Senior Level Positions (see GAO Order 2319.1);

      (4)  experts and consultants;

      (5)  reemployed annuitants;

      (6)  employees on time limited appointments of 1 year or less (see GAO Order 2316.1);

      (7)  employees on Veterans Readjustment Act (VRA) appointments (see GAO Order 2307.1); and

      (8)  employees on noncompetitive appointments, **except** for attorneys and Comptroller General (CG) appointees (see GAO Order 2213.1.).

**Note:** Employees on VRA appointments and employees on noncompetitive appointments (**except** for attorneys and CG appointees) are excluded from coverage by this chapter consistent with 5 U.S.C. Ch. 75, Subch. 1.

4

July 23, 2001                                                                                           2752.1

### 3.  STEP 1 - PROPOSING A SUSPENSION.

a.  <u>Written Proposal</u>.  Before an employee may be suspended, a proposing official (see par. 5) shall give the employee a written proposal.

b.  <u>HC Office Review</u>.  The proposing official should submit the written proposal to Employee Relations, HC, before giving it to the employee. HC will review such notices for conformity to procedural requirements and provide advisory and technical assistance to proposing officials.

c.  <u>Contents</u>.  The proposal shall:

(1)  state the specific reason(s) for the proposed suspension;

(2)  inform the employee that he or she and his/her representative may review the materials relied upon to support the proposed suspension; and

(3)  inform the employee that he or she may reply, orally or in writing, as set as forth para. 3e below.

d.  <u>Representation</u>.  The employee may be represented by an attorney or other person.  The deciding official (see par. 5) may disallow as a representative an individual whose activities as a representative would cause a conflict of interest or position; whose release from his/her position would give rise to unreasonable costs; or whose priority work assignments preclude release.  In such cases, the deciding official will notify the employee in writing of the reason(s) for the denial.

e.  <u>Reply</u>.  The proposing official shall provide the employee a reasonable time (i.e., at least 3 days where feasible but in any event not less than 24 hours) to reply to the notice.

(1)  The employee may reply orally and/or in writing and furnish affidavits and other documentary evidence to support his or her reply.

(2)  If an oral reply is given, the deciding official may hear the reply or designate someone (other than the proposing official) to hear and prepare a written summary of it.

(3)  Employees are entitled to a reasonable amount of official time to review the supporting materials and to present an oral reply to the deciding official or designee.  Official time shall not be authorized for any other activity related to the reply.

f.  <u>Contributory Medical Conditions</u>.  If an employee wishes GAO to consider any medical (including mental) condition which may have contributed to the conduct and, if applicable, performance on which the proposed suspension is based, he or she must furnish management with appropriate medical documentation. The employee should, where possible, supply the documentation upon being informed of his or her conduct and, if applicable, performance deficiency. If the employee offers such documentation after receipt of an adverse action proposal, the information shall be supplied no later than the date for reply.

(1)  If the medical documentation supplied by the employee is considered inadequate, the deciding official may

5

2752.1                                                                                July 23, 2001

     (a) require the employee to undergo a medical examination, if the employee's position has physical requirements or medical standards or is covered by a medical evaluation program; or

     (b) offer the employee a medical examination, if the employee's position does not have physical requirements or medical standards or is not part of a medical evaluation program.

    (2)  If the deciding official requires or offers a medical examination, he or she shall

     (a) inform the employee in writing of the reason(s) for the examination, and the consequences of not undergoing it;

     (b) designate the physician or mental health specialist to conduct the examination;

     (c) allow the employee to provide additional medical documentation;

     (d) indicate that GAO will pay for reasonable costs associated with the examination; and

     (e) grant the employee up to 1 day of administrative leave for the examination.

    (3)  If the employee has the requisite years of service under the Civil Service Retirement System or the Federal Employees' Retirement System, GAO should give the employee information concerning disability retirement, but must not encourage or suggest that the employee take disability retirement. However, an employee's application for disability retirement should not stop or delay GAO's taking of an appropriate adverse action.

4.   **STEP 2 - DECIDING THE PROPOSED SUSPENSION.**

  a.  In deciding on the proposed suspension, the deciding official shall consider

    (1)  only the reason(s) specified in the notice of proposed action; and

    (2)  the reply, if any, the employee and his or her representative gave to the notice.

  b.  The deciding official should submit the decision to the HC before giving it to the employee  HC reviews such notices for penalty consistency and conformity to procedural requirements.

  c.  The decision shall contain specific findings as to whether the deciding official has sustained or not sustained each charge in the proposal (and, where applicable, each specification of a charge).  In addition, the decision shall specify the factors considered in selecting the penalty (see app. 1) and confirm that the action is "for such cause as will promote the efficiency of the service".

  d.  The agency shall deliver the decision notice to the employee before the time the action will be effective.

July 23, 2001                                                        2752.1

5.  **IDENTIFICATION OF PROPOSING AND DECIDING OFFICIALS.**

   FIGURE 2.1.  IDENTIFICATION OF PROPOSING AND DECIDING OFFICIALS

| If the employee against whom the suspension action is being taken ... | Then the proposing official is ... | And the deciding official is ... |
|---|---|---|
| reports to a supervisor who is below a managing director or unit head | that supervisor or a higher level supervisor in the employee's chain of command designated by the unit head | the unit head |
| reports to a unit head | the unit head | the managing director if the unit head reports to a managing director.<br><br>the Chief Operating Officer (COO) if the unit head reports to the COO.<br><br>the Comptroller General (CG), if the unit head reports to the CG. |
| reports to the COO, | the COO | the CG. |
| reports to the CG, | the CG | the CG. |

Note: If the Chief Mission Support Officer deems it appropriate, the Human Capital Officer may be
designated to act as the deciding official in lieu of a unit head.

6.  **EMPLOYEES' APPEAL RIGHTS.**

   a.  An employee may grieve a suspension of 14 days or less under the administrative grievance
procedure, GAO Order 2771.1.  A grievance must be submitted in writing to the Chief Operating Officer
within 10 days of the effective date of the suspension.

   b.  An employee who believes that a suspension of 14 days or less is discriminatory on the basis of race,
color, religion, sex, national origin, age, disability, sexual orientation or retaliation for protected activities
may file a complaint with GAO's Opportunities and Inclusiveness Office under GAO Order 2713.2.  To do
so, the employee must contact a civil rights counselor for precomplaint counseling within 45 days of the
effective date of the suspension.

   c.  If an employee against whom an action is taken under this chapter believes the action constitutes a
prohibited personnel practice as defined in 4 C.F.R. § 2.5, he/she may file a prohibited personnel practice
complaint with the GAO Personnel Appeals Board's General Counsel's office.  Any such complaint must be
filed not later than 30 days after the effective date of the action.  Complaints of discrimination, however,
must first be filed with GAO's Opportunities and Inclusiveness Office.

7

2025127525

2752.1                                                               July 23, 2001

7.  **DOCUMENTATION OF SUSPENSIONS.**  HC maintains the official suspension files, including the following documents: the proposal notice; the employee's written reply (includes email), if any; a summary of the employee's oral reply, if any; the decision notice; and any other supporting materials. Deciding officials are required to submit this material to the HC when an action has been completed.  HC shall furnish copies of these documents to the affected employee and his/her representative upon the employee's written request.

July 23, 2001

2752.1

## CHAPTER 3. REMOVALS, SUSPENSIONS FOR MORE THAN 14 DAYS, REDUCTIONS IN GRADE OR BAND, REDUCTIONS IN PAY, AND FURLOUGHS FOR 30 DAYS OR LESS

1. **TYPES OF ADVERSE ACTIONS COVERED.**  This chapter covers the following types of adverse actions:

    a.  removals;

    b.  suspensions for more than 14 days;

    c.  indefinite suspensions;

    d.  reductions in grade or band;

    e.  reductions in pay; and

    f.  furloughs for 30 days or less.

2. **TYPES OF ACTIONS NOT COVERED.**  This chapter does **not** cover the following types of actions:

    a.  suspensions or removals taken for national security reasons under GAO Order 2752.2;

    b.  reductions in grade or band of supervisors or managers who have not completed the required supervisory or managerial probationary periods (see GAO Order 2315.1);

    c.  reductions in grade or band, or removals taken under GAO Order 2432.1;

    d.  reduction-in-force actions taken under GAO Order 2351.1;

    e.  terminations of appointments on their established expiration dates;

    f.  terminations of time-limited promotions;

    g.  reductions of employees' pay because the pay is contrary to law or regulation;

    h.  actions that entitle employees to grade and pay retention and actions to end these entitlements (see GAO Order 2536.1);

    i.  placement of intermittent or seasonal employees in nonduty, nonpay status in accordance with conditions established at the times of their appointments;

    j.  voluntary employee actions; and

    k.  actions ordered by the Personnel Appeals Board.

2752.1                                                            July 23, 2001

## 3.   **EMPLOYEE COVERAGE**.

a. Employees in APSS **and** attorney positions are covered, except as follows:

(1) Employees who are required to complete a 1-year probationary period, but have not yet done so, are not covered by this chapter. (See GAO Order 2315.1)

(2) Employees whose appointments do not require a probationary period are not covered by this chapter until they have completed 1 year of current continuous service in the same position or similar positions.

b. Employees in GAO analyst positions are covered, except as follows:

(1) Employees who are required to complete a 2-year probationary period, but have not yet done so, are not covered by this chapter. (In some cases the probationary period for GAO analyst employees is 1 year. See GAO Order 2315.1)

(2) Employees whose appointments do not require a probationary period are not covered by this chapter until they have completed 2 years of current continuous service in the same position or similar positions.

c. The following employees are **not** covered by this chapter:

(1) the Comptroller General and the Deputy Comptroller General;

(2) experts and consultants;

(3) reemployed annuitants;

(4) employees on time limited appointments of 1 year or less (see GAO Order 2316.1);

(5) non-preference eligible employees on noncompetitive appointments, **except** for attorneys and Comptroller General (CG) appointees (see GAO Order 2213.1.)

**Note:** Non-preference eligible employees on noncompetitive appointments (**except** for attorneys and CG appointees) are excluded from coverage by this chapter consistent with 5 U.S.C. 7511. Section 7511 covers non-preference eligible "excepted service" employees only if they (1) are not serving probationary periods pending conversion to the "competitive service" **or** (2) have completed 2 years of current continuous service under other than a temporary appointment limited to 2 years or less.

## 4.   STEP 1 - PROPOSING AN ADVERSE ACTION.

a. Advance Written Notice. A proposing official (see par. 6) shall give the employee a 30-day advance written proposal specifying the reason(s) for the proposed adverse action (See par. 4g for exceptions). The proposal shall state the specific reason(s) for the proposed action; inform the employee that he or she and his/her representative may review the materials relied upon to support the proposed action; and inform the employee that he or she may reply, orally or in writing, as set as forth para. 4d below. The proposing official should submit the proposal to HC before giving it to the employee. HC will review such notices for conformity to procedural requirements.

2025127525

July 23, 2001                                                                                2752.1

    b.  Furloughs.  If GAO furloughs some but not all employees in a competitive level, the advance written notice must explain the basis for the furlough and why those particular employees were selected.

    c.  Representation.  The employee may be represented by an attorney or other person.  The deciding official (see par. 6) may disallow as a representative an individual whose activities as a representative would cause a conflict of interest or position; whose release from his/her position would give rise to unreasonable costs; or whose priority work assignments preclude release.  In such cases, the deciding official will notify the employee in writing of the reason(s) for the denial.

    d.  Reply.

      (1)  The proposing official shall provide the employee at least 7 days to reply orally, in writing, or both, and to furnish affidavits and other documentary evidence to support his or her reply.

      (2)  If an oral reply is given, the deciding official may hear the reply or designate someone else (other than the proposing official) to hear and prepare a written summary of it.

      (3)  Employees are entitled to a reasonable amount of official time to review the supporting materials and to present an oral reply to the deciding official or designee.  Official time shall not be authorized for any other activity related to the reply.

    e.  Employee Status During Notice Period.

      (1)  An employee whose removal or suspension has been proposed generally shall remain in a duty status in his or her regular position during the notice period.  However, if the employee's presence at work would pose a threat to the employee or others, result in the loss of or damage to government property, or otherwise jeopardize legitimate government interests, the proposing official may, in consultation with the HC.

        (a) assign him\her to duties that would not present a threat to safety, GAO's mission, or government property;

        (b) allow the employee to take annual leave, sick leave, or leave without pay, as appropriate;

        (c) charge the employee with absence without leave (AWOL) for unapproved absences;

        (d) and/or place the employee in a paid, nonduty status, i.e., administrative leave, for such time as is necessary to effect the action.

    f.  Contributory Medical Conditions.  If an employee wishes GAO to consider any medical (including mental) condition which may have contributed to the conduct and, if applicable, performance on which the proposed adverse action is based, he or she must furnish management with appropriate medical documentation.  The employee should, where possible, supply the documentation upon being informed of his or her conduct and, if applicable, performance deficiency.  If the employee offers such documentation after receipt of an adverse action proposal, the information shall be supplied no later than the date for reply.

      (1)  If the medical documentation supplied by the employee is considered inadequate, the deciding official may

2752.1                                                                    July 23, 2001

     (a) require the employee to undergo a medical examination if the employee's position has physical requirements or medical standards or is covered by a medical evaluation program; or

     (b) offer the employee a medical examination if the employee's position does not have physical requirements or medical standards or is not part of a medical evaluation program.

    (2)  If the deciding official requires or offers a medical examination, he or she shall

     (a) inform the employee in writing of the reason(s) for requiring or offering the examination and the consequences of not undergoing it;

     (b) designate the physician or mental health specialist to conduct the examination;

     (c) allow the employee to provide additional medical documentation;

     (d) indicate that GAO will pay for reasonable costs associated with the examination; and

     (e) grant the employee up to 1 day of administrative leave for the examination.

    (3)  If the employee has the requisite years of service under the Civil Service Retirement System or the Federal Employees' Retirement System, GAO should give the employee information concerning disability retirement, but must not encourage or suggest that the employee take disability retirement. However, this will not stop the proposed action.

    g.  The deciding official may give less than 30 days' advance written notice for a proposed removal or suspension when there is reasonable cause to believe that the employee has committed a crime for which he or she may be imprisoned.  In such cases, the employee is entitled to reply to the proposal notice within a reasonable time, but not less than 7 days.  GAO may forgo the advance written notice and opportunity to answer when it furloughs employees because of unforeseeable circumstances, such as sudden equipment breakdowns, acts of God, or emergencies requiring the immediate curtailment of activities.

## 5.  STEP 2 - DECIDING THE PROPOSED ADVERSE ACTION.

    a.  In deciding on the proposed adverse action, the deciding official shall consider

    (1)  the reason(s) specified in the notice of proposed action and

    (2)  the reply, if any, the employee and his or her representative gave to the notice.

    b.  The deciding official should submit the decision to HC, before giving it to the employee.  HC will review such notices for penalty consistency and conformity to procedural requirements.

    c.  The decision shall

    (1)  contain specific findings as to whether each charge (and, where applicable, each specification of a charge) in the proposal is or is not sustained;

    (2)  specify the factors considered in selecting the penalty (see app. 1); and

July 23, 2001                                                              2752.1

    (3)  confirm that the action is "for such cause as will promote the efficiency of the service".

    d.  The agency shall deliver the decision notice to the employee at or before the time the action will be effective.

## 6.  IDENTIFICATION OF PROPOSING AND DECIDING OFFICIALS.

### FIGURE 3.1.  IDENTIFICATION OF PROPOSING AND DECIDING OFFICIALS

| If the employee against whom the adverse action is being taken ... | Then the proposing official is ... | And the deciding official is ... |
|---|---|---|
| reports to a supervisor who is below a managing director or unit head | that supervisor or a higher level supervisor in the employee's chain of command designated by the unit head | the unit head |
| reports to a unit head | the unit head | the managing director if the unit head reports to a managing director. the Chief Operating Officer (COO) if the unit head reports to the COO. the Comptroller General (CG), if the unit head reports to the CG. |
| reports to the COO, | the COO | the CG. |
| reports to the CG, | the CG | the CG. |

Note: If the Chief Mission Support Officer deems it appropriate, the Human Capital Officer may be designated to act as the deciding official in lieu of a unit head.

## 7.  EMPLOYEES' APPEAL RIGHTS.

    a.  An employee may appeal an adverse action under this chapter to the Personnel Appeals Board by filing a written charge with the GAO Personnel Appeals Board's General Counsel's office within 30 days of the effective date of the action.  The employee may raise allegations of prohibited personnel practices in the appeal.

    b.  An employee who believes that an adverse action under this chapter is discriminatory on the basis of race, color, religion, sex, national origin, age, or disability, or retaliation for activities protected by the anti-discrimination statutes may elect to do either (but not both) of the following;

    (1)  File a charge directly with the General Counsel of the Personnel Appeals Board within 30 days of the effective date of the action and raise the issue of discrimination in the course of proceedings before the Board; or

2025127525

2752.1                                                                July 23, 2001

    (2)   File a complaint under GAO Order 2713.2.  To do so, the employee must contact a counselor in the Opportunities and Inclusiveness Office within 45 days of the effective date of the action.

    c.  An employee may file a complaint of discrimination on the basis of sexual orientation under GAO Order 2713.2.  To do so, the employee must contact a counselor in the Opportunities and Inclusiveness Office within 45 days of the effective date of the action.

**8.   DOCUMENTATION OF ADVERSE ACTIONS.**  HC maintains the official adverse action files, including the following documents:  the proposal notice; the employee's written reply (includes email), if any; a summary of the employee's oral reply, if any; the decision notice; and any other supporting materials. Deciding officials are required to submit this material to HC when an action has been completed.  HC shall furnish copies of these documents to the affected employee and his/her representative upon the employee's written request.

July 23, 2001                                             2752.1

## APPENDIX 1  FACTORS FOR DETERMINING APPROPRIATE PENALTIES

1.  **GENERAL.**  The following factors should be considered by officials in determining the appropriateness of proposed penalties and in making decisions in adverse action cases.  The factors represent considerations which may play a role in determining whether lenient or stern treatment is warranted in particular disciplinary actions.  The factors are as follows:

    a.  the nature and the seriousness of the offense and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional, technical, inadvertent, was committed maliciously, for gain, or was frequently repeated;

    b.  the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and the prominence of the position;

    c.  the employee's past disciplinary record;

    d.  the employee's past work record, including length of service, performance on the job, ability to get along with coworkers, and dependability;

    e.  the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

    f.  consistency of the penalty with those imposed upon other employees for the same or similar offense(s);

    g.  consistency of the penalty with the Guide for Disciplinary Offenses and Penalties (see GAO Order 2751.1);

    h.  the notoriety of the offense or its impact upon GAO's reputation;

    i.  the clarity with which the employee was on notice of any rules that were violated in committing the offense or had been warned about the conduct in question;

    j.  the potential for the employee's rehabilitation;

    k.  mitigating circumstances surrounding the offense such as unusual job tensions; personality problems; mental impairment; and harassment, bad faith, malice or provocation on the part of others involved in the matter; and

    l.  the adequacy and the effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

2.  **APPLYING THE FACTORS.**  The proposing and deciding officials should consider those factors set forth in paragraph 1 above that are relevant to the circumstances of the individual case.  Not every factor applies in every case.  The proposing and deciding officials must weigh or balance the factors in selecting the appropriate penalty.

United States
Government
Accountability Office



# Order

| 2335.1 |

**September 30, 2005**

Subject: **PROMOTION AND INTERNAL PLACEMENT**

| Paragraph | Page |
|---|---|
| 1. Purpose, Scope, and Applicability | 1 |
| 2. Supersession | 1 |
| 3. References | 1 |
| 4. Basic Authority | 2 |
| 5. Definitions | 2 |
| 6. Policy | 2 |
| 7. Veterans' Employment Opportunities Act of 1998 | 2 |
| 8. Promotion Plan Requirements | 2 |
| 9. Employee Complaints | 3 |
| 10. Documentation | 3 |

1. **PURPOSE, SCOPE, AND APPLICABILITY.** This order establishes U.S. Government Accountability Office (GAO) policy on merit promotion. It establishes requirements for merit promotion plans to ensure that promotions are made on a merit basis under systematic and equitable procedures. The provisions of this order do not apply to Senior Executive Service or Senior Level positions, to appointments made under GAO's Competitive Examining System, or to selections made under the provisions of GAO Order 2213.1, Noncompetitive Positions.

2. **SUPERSESSION.** This order supersedes GAO Order 2335.1, "GAO's Merit Promotion Program," dated November 7, 2003. Changes have been made to update organizational and position titles

3. **REFERENCES.**

   a. GAO Order 2213.1, "Noncompetitive Positions."

   b. GAO Order 2332.1, "Recruitment and Selection Through Competitive Examination."

   c. GAO Order 2713.2, "Discrimination Complaint Process."

   d. GAO Order 2771.1, "Administrative Grievance Procedure."

   e. Public Law 96-191, "The GAO Personnel Act of 1980."106-303."

   f. Veterans' Employment Opportunities Act of 1998, as amended.

---

Distribution: GAO INTRANET                              Initiated by: Human Capital Office

2025127525

2335.1                                                        September 30, 2005

4.  **BASIC AUTHORITY.**  The GAO Personnel Act of 1980 (P.L. 96-191) requires all employees to be appointed, promoted, and assigned on the basis of merit and fitness.

5.  **DEFINITIONS.**

   a.  Promotion Program.  A promotion program is the total system GAO establishes to implement its promotion policy.  It provides the framework for ensuring fair consideration and merit selection and states the requirements to which all promotion plans must conform.

   b.  Promotion Plan.  A promotion plan is a document that applies the policies and requirements of GAO's promotion program to positions grouped together for promotion purposes.  The plan establishes the methods to be followed in selecting employees for promotion to covered positions.

   c.  Area of Consideration.  The area of consideration is the organizational and/or geographic boundary in which GAO makes a search for eligible candidates.  All employees within a designated area of consideration who meet the minimum qualification standards and all other legal or regulatory requirements are eligible for promotion consideration.

6.  **POLICY.**

   a.  It is the policy of GAO to fill all positions from among the best-qualified candidates available.  Selections will be made without regard to race, color, religion, sex, national origin, age, disability, political affiliation, marital status, sexual orientation or other nonmerit factors and will be based solely on job-related requirements.

   b.  Management has the right to fill positions by promotion or by selection from other appropriate sources, such as reassignment, reinstatement of former federal employees, appointment from certificates of eligibles under the Competitive Examining System, or employment under noncompetitive appointing authorities.  In deciding which source or sources to use, selecting officials have an obligation to determine which would best meet GAO's mission objectives, contribute fresh ideas and viewpoints, and meet affirmative action goals.

   c.  GAO's promotion program is administered through promotion plans that are based on guidelines in law, regulation, and this order.  GAO's merit promotion plans are issued in the 2335 series of the GAO Operations Manual.

7.  **VETERANS' EMPLOYMENT OPPORTUNITIES ACT OF 1998.**  GAO's merit promotion program operates in accordance with the Veterans Employment Opportunities Act of 1998.  Merit promotion announcements open to applicants outside of GAO shall include a statement indicating that veterans who are preference eligibles or who have been separated from the armed forces under honorable conditions after 3 or more years of active service may apply.  Veterans who apply under this provision do not receive preference or priority in the selection process.

8.  **PROMOTION PLAN REQUIREMENTS.**

   a.  Each promotion plan will identify the positions it covers and describe the procedures to be used in identifying, evaluating, and selecting employees for advancement to positions covered by the plan.

   b.  Promotion plans must state the types of actions that require the use of competitive procedures and list exceptions to the competitive procedures.

2335.1                  September 30, 2005

  c. The area of consideration within which candidates will be sought may be specified in the plan itself or established for each vacancy. The minimum area is a geographic location of a team, a staff office or a mission support office, but may be expanded, as necessary, to provide management with an adequate number of high quality employees from which to choose.

  d. Promotion plans must allow for consideration of employees temporarily absent in the military service, in an international organization, on an Intergovernmental Personnel Act assignment, or due to compensable injury that does not exceed 1 year.

  e. Promotion plans must preserve GAO's right, at any point in the staffing process, to select or not select from a promotion list or from any other appropriate source of candidates.

  f. Promotion plans will be posted on the GAO Intranet.

9. **EMPLOYEE COMPLAINTS.** Employees have the right to file a complaint relating to a promotion action. Such complaints shall be resolved under appropriate grievance procedures in GAO Order 2771.1 or equal employment opportunity procedures in GAO Order 2713.2, depending on the nature of the complaint. Nonselection for promotion from among a group of properly certified candidates or failure to receive a noncompetitive promotion is not a basis for a grievance or an appeal.

10. **DOCUMENTATION.** A record of each action sufficient to permit reconstruction of the evaluation and selection process must be maintained for the period of time specified in the promotion plan.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DIANE R. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DAVID M. WALKER** | ) | **Civil Action No.: JDB-07-1452** |
| **Comptroller General of the United States** | ) | |
| **Government Accountability Office** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | | |

**ORDER**

UPON CONSIDERATION of the defendant's Motion to Dismiss or, in the

Alternative, for Summary Judgment, any opposition thereto, any Reply, and the

applicable law, it is this ____ day of _____, 2008, **ORDERED** that the

Motion to Dismiss or, in the Alternative, for Summary Judgment is **GRANTED;**


_____
Hon. John D. Bates
United States District Judge