## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **DIANE R. WILLIAMS,** |
| **Plaintiff,** |
| **v.** |
| **GENE L. DODARO, Comptroller General of the United States Government Accountability Office,** |
| **Defendant.** |

Civil Action No.  07-1452  (JDB)

## <u>MEMORANDUM OPINION</u>

Plaintiff Diane R. Williams, formerly a Senior Trial Attorney at the Government

Accountability Office's ("GAO") Personnel Appeals Board ("PAB") in the Office of the General

Counsel, brings this action against Gene L. Dodaro in his official capacity as Comptroller

General of the GAO, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 § U.S.C. § 2000e <u>et seq.</u>  Presently before the Court is defendant's motion for

partial summary judgment on the amended complaint.  Upon careful consideration of the motion

and the parties' memoranda, the applicable law, and the entire record, the Court will deny

defendant's motion.[1]

## BACKGROUND

The factual background of this action is set forth more fully in Williams v. Dodaro, 576

F. Supp. 2d 72, 93 (D.D.C. 2008), and is repeated here only as needed.  Plaintiff's original

---

[1]  For ease of reference, the memorandum in support of defendant's motion for partial summary judgment will be cited as "Def.'s Mem.," and plaintiff's opposition brief will be cited as "Pl.'s Mem."  Defendant's Report of Investigation, a voluminous exhibit filed separately from its memorandum, will be cited as the "ROI."  <u>See</u> Def.'s Notice of Filing (July 17, 2009).  Plaintiff's affidavit dated August 31, 2009, will be cited as the "Williams Affidavit."

complaint against the GAO encompassed claims of discrimination on the basis of age, race, and sex, hostile work environment, and retaliation, and arose in large part from defendant's denial of plaintiff's requests for a noncompetitive promotion from GS-14 to GS-15.  On September 17, 2008, the Court entered summary judgment for defendant on all claims except for plaintiff's claims concerning retaliation in the form of non-promotion in April 2006 and a written reprimand in July 2006.  Williams, 576 F. Supp. 2d at 93.  On November 10, 2008, the Court held the initial scheduling conference, and entered a scheduling order allowing discovery to go forward on the remaining claims.  The next month, on December 1, 2008, plaintiff's supervisor, General Counsel Anne Wagner, issued a notice of proposed termination based on three charges of misconduct.  See  ROI, Tab 27.  The agency, through PAB Chair Paul Coran, approved the termination on December 31, 2008.  Id. Tab 1, at 6.

The charges of misconduct focus on three instances of alleged misrepresentation and insubordination which occurred in November 2008, in the course of plaintiff's actions as an attorney in the PAB/OGC.  The first allegation of misconduct arose from the events surrounding the PAB's rejection of a brief filed by Williams in early November in the matter of Jones v. GAO, Docket No. 08-04.  Id. at 1. Williams was responsible for filing a brief on October 31, 2008, which ultimately was filed by her supervisor, Wagner, without exhibits or exhibit numbers in the brief due to plaintiff's trial schedule.  Id.; Williams Affidavit ¶¶ 7-9.  Williams filed a brief with exhibits the following Monday, November 3, but her version of the brief also differed in other respects from the original brief.  ROI, Tab 1, at 2.  Because the filing failed to comport with PAB rules and practices, the PAB rejected it on November 4.  Williams Affidavit ¶¶ 7-9.  According to Williams, however, she was unaware that Wagner had already filed the brief, along with a motion to file exhibits out of time.  Id.  ¶¶ 7-9.  Therefore, Williams continued to work on the brief -- the substance of the brief as well as the exhibit numbers -- believing she was under a

2

duty to file the final version on Monday, November 3, 2008.  Id.  In reviewing Williams's

response to the proposed termination, the agency rejected her explanation as inadequate.  See

ROI, Tab 1, at 2-3.

Second, Williams was charged with failure to comply with Wagner's directive to provide

information that was necessary for the agency to meet its discovery obligations in a case pending

before another district judge, Beyah v. Walker, Civil Action No. 07-109 (D.D.C.).  ROI, Tab 1, at

3.  The discovery at issue concerned Williams's missing witness interview notes, taken in her

capacity as an attorney investigating Beyah's EEO claims at the administrative level.  See ROI,

Tab 20, at 24-27.  On November 5, 2008, Williams testified before Judge Huvelle that "all of the

documents that I had accumulated including notes went into a file.  I don't know what happened

to those documents or the files after I stopped investigating Mr. Beyah's case."  Id. at 26.  That

same day, the Court ordered Wagner to "try to find the notes."  Id. at 27.

Williams was then out of the office on annual leave for the period November 5th through

12th, which had been approved by Wagner the week before.  Williams Affidavit ¶¶ 11, 15.

Williams had not received a request from Wagner for further advice or guidance on the discovery

matter, and believing she had provided Wagner all the information she had about the Beyah

notes, she did not alter her leave plans.  Id.  While Williams was out, Wagner issued a memo on

November 12, 2008, directing Williams to produce by "no later than 3:00 p.m. this afternoon" all

Beyah notes in her possession or a sworn statement that the notes did not exist, acting upon

information received from another employee that Williams had taken notes on a laptop computer.

Id.; see also ROI, Tab 12 (Attachment 12).  Plaintiff received the memorandum when she

returned the next day and, realizing she was already out of compliance with the deadline,

responded orally that day that her notes on the Beyah case were printed out and placed in the file

room in 2004.  Williams Affidavit ¶ 17.  The agency again rejected Williams's response as

inadequate, finding that she failed to comply with Wagner's directive even when she returned on

November 13.  ROI, Tab 1, at 4.

     Third, plaintiff was charged with concealing information that was relevant to the Beyah

case -- that is, the storage of Williams's witness interview notes on a latpop computer.  ROI, Tab

1, at 4.  Plaintiff submits that she did not mention the laptop computer because she had received

several replacement laptops in the years since the interviews at issue, and had made a point of

retaining and storing only hard copies of the interview notes.  Williams Affidavit ¶ 16.  Williams

also alleges that Wagner was already aware that she often took notes on a laptop computer.  Id.

The agency again found her response inadequate, stating that Williams had a duty to disclose the

full "chain of custody" of the notes and her failure to do so prejudiced the agency's ability to

respond to the court in Beyah.  ROI, Tab 1, at 5.

     Following her termination, Williams moved for leave to amend her complaint to add an

additional claim of retaliation, which was granted by Order dated June 24, 2009.  Discovery was

stayed on all claims based on the parties' expectation that defendant would file a pre-discovery

motion for partial summary judgment on the retaliation claim concerning termination.  See id. at

2.  Defendant's motion for summary judgment on the termination claim is now fully briefed and

ripe for resolution.[2]

---

[2] Defendant also moves for summary judgment "to the extent [the amended complaint]
alleges that Plaintiff's termination constitutes race, gender and age discrimination, hostile work
environment, and retaliation . . . ."  Def's. Mem. at 1.  As the Court explained when granting
leave to amend, plaintiff was allowed to replead the claims resolved on the first round of
summary judgment briefing in order to preserve those claims for appellate review.  See Order at
1-2 (filed June 24, 2009).  Plaintiff reiterates in her latest brief that the only new claim in her
amended complaint is the retaliation claim concerning termination.  See Pl.'s Mem. at 3 n.2 ("[I]n
amending her complaint to include her termination from employment, Plaintiff only raised a
claim of retaliation.").

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

The Court considers defendant's motion for summary judgment under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must first establish a prima facie case by a

preponderance of the evidence.  See id.  For a retaliation claim, this means a plaintiff must

establish: "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially

adverse action by his employer; and (3) that a causal link connects the two."  Jones v. Bernanke,

557 F.3d 670, 677 (D.C. Cir. 2009); accord Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir.

2007).

      Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to

articulate a legitimate, non-discriminatory explanation for its action.  See Smith v. Dist. of

Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005).  In asserting its explanation, an employer "need

not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if

the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the

plaintiff."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981) (citation omitted).

      Where assessment of the employer's legitimate, nondiscriminatory reason becomes

necessary, a prolonged evaluation of the sufficiency of plaintiff's prima facie case is unnecessary,

for the central inquiry then becomes "whether the plaintiff produced sufficient evidence for a

reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual

reason and that the employer intentionally discriminated against the plaintiff on a prohibited

basis."  See Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008); see also

Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (citing St. Mary's Honor

Ctr. v. Hicks, 509 U.S. 502, 507-08, 511 (1993), and U.S. Postal Serv. Bd. of Governors v.

Aikens, 460 U.S. 711, 714-16 (1983)).  In other words, the McDonnell Douglas burden-shifting

framework essentially evaporates and the only remaining issue is retaliation vel non.

      To determine whether a plaintiff has supplied sufficient evidence for a reasonable jury to

find retaliation, "the court reviews each of the three relevant categories of evidence -- prima

facie, pretext, and any other -- to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation."  Jones, 557 F.3d at 679 (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002)).

In the instant case, Williams's termination easily qualifies as an adverse personnel action. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 60 (2006) (holding that in retaliation claims an employer's action must be "materially adverse," meaning "likely" to "dissuade[] a reasonable worker from making or supporting a charge of discrimination"). Additionally, in the months preceding her termination, Williams engaged in statutorily protected activity, in particular, filing new EEO charges in September 2008 and actively pursuing her Title VII litigation in this Court.  See 42 U.S.C. § 2000e-16(c); Holcomb v. Powell, 433 F. 3d 889, 903 (D.C. Cir. 2006).

Defendant provides three legitimate, non-discriminatory reasons for removing Williams -- the charges set forth in Wagner's Notice of Proposed Removal and the final Decision on Proposed Removal, summarized above.  See ROI, Tabs 1 and 27.  The Court must therefore consider whether Williams has supplied sufficient evidence for a reasonable jury to conclude that retaliation was the true motive for her termination.  See Brady, 520 F.3d at 494.

The very close temporal connection between Williams's protected activity and her termination is a key part of Williams's evidence of a retaliatory motive.  See Holcomb, 433 F.3d at 903 (holding that where plaintiff "repeatedly engaged in protected activity" in "close temporal proximity" to the adverse action, the plaintiff had satisfied her burden of providing evidence supporting an inference of retaliatory motive).  Wagner proposed Williams's termination on December 1, 2008, Def's. Mot., Ex. 27 at 1, just two and a half months after the Court issued its ruling on the Comptroller General's motion for summary judgment -- a ruling that was partially

favorable to Williams.  See Williams, 576 F. Supp. 2d at 93.  Additionally, Wagner -- who was the focus of Williams's original discrimination and retaliation claims -- admits that she drafted the proposed termination on November 18, 2008 (see Def.'s Reply at 3), only eight days after the parties appeared in Court for the initial scheduling conference and the Court issued an order allowing discovery to proceed.  See Scheduling Order (filed Nov. 10, 2008).  Considering plaintiff's repeated protected activity, and the very close temporal proximity of Wagner's initiation of the adverse action, this evidence could very well end the Court's inquiry.  But the record also shows evidence on which a reasonable jury could find that defendant's proffered reasons for the termination were a pretext for retaliation.

Drawing all inferences in favor of Williams, a jury could reasonably conclude that the characterization of the Jones brief filed with the PAB as a "deliberate misrepresentation" was manufactured by Wagner, in light of the explanation of the background circumstances provided by Williams which, if believed, show a miscommunication rather than falsification.  See Williams Affidavit ¶¶ 6-10.  If Williams's version of events concerning the Beyah litigation is credited, a jury could also reasonably conclude that Wagner's directive to Williams on November 12, 2008, to provide a response that same day concerning the Beyah discovery was issued by Wagner with full knowledge that compliance was not possible in light of Williams's approved absence that day, and that the failure to inform Wagner that Williams had initially taken her Beyah interview notes on her laptop was not a material omission.  Id. ¶¶ 11-16.  These conclusions would undermine defendant's proffered explanation for terminating Williams -- that she was terminated for "egregious misconduct," Def.'s Mem. at 3, "deliberate misrepresentation, falsification, or concealment of . . . facts," id. at 5 (emphasis added), "insubordination," id. at 6, and "deceptive" actions, id. at 9.  A reasonable jury could therefore conclude, having drawn all

inferences in favor of Williams, that defendant's explanations are a pretext for retaliatory motive. Considering plaintiff's evidence together with the close temporal relationship between Williams's protected activity and her termination, the Court concludes that there remain genuine issues of material fact concerning defendant's motive and, hence, summary judgment on the termination-based retaliation claim is inappropriate.

## CONCLUSION

For the foregoing reasons, the Court will deny defendant's motion for partial summary judgment.  Defendant will be required to answer the amended complaint by not later than March 26, 2010.  An initial scheduling conference pursuant to Fed. R. Civ. P. 16(b) will be held on April 29, 2010, for the purpose of entering a new scheduling order.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Date:  March 5, 2010